## DES ROSIERS v. FORD MOTOR CO.
### No. 3891.

Circuit Court of Appeals, First Circuit.
July 20, 1944.

As Amended Aug. 5, 1944.

Thomas A. Jenckes, Providence, R. I., for appellant.

I. Joseph Farley and Thomas J. Hughes, both of Detroit, Mich. and Richard F. Walker and Roberts, Cushman & Woodberry, all of Boston, Mass., for Ford Motor Co.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

WOODBURY, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the District of Massachusetts dismissing a bill of complaint filed by the plaintiff-appellant alleging infringement of a reissue patent (No. 20,086) issued to him on September 1, 1936, for "Vehicle Brake Controlling Means." The court below did not write a memorandum opinion but filed findings of fact and conclusions of law to the effect that the only claim in issue (No. 29) was invalid for lack of patentable invention, for anticipation, and because it covered "a different invention from that disclosed, claimed or intended to be secured by the original Patent No. 1,575,323."

On this appeal the plaintiff's basic contentions are that the District Court misconstrued both his original and his reissue patents and failed either to understand or to apply the mechanical principles inherent in his invention. He says that he was the first to devise a system at once simple, convenient, inexpensive, safe and practical, for the control by mechanical means of brakes on all four wheels of automobiles; that this is what his patents disclosed and secured, and that the defendant used his system to control the four wheel brakes on the Model V 8 Fords which it produced from 1934 to 1938 inclusive. The defendant, on the other hand, says that all the plaintiff disclosed in his patents and all that he is entitled to a monopoly on is a "gadget" for attachment to the old Model T Ford, which it ceased to produce in 1926, whereby the rear wheel brakes and the transmission brake—it did not have four wheel brakes—could be simultaneously applied without disengaging the clutch. To understand these divergent views some description of the once world famous but now almost legendary Model T will be helpful.

The Ford Model T did not have the conventional sliding gear transmission controlled by a gear-shift lever operated by hand and a foot operated clutch, but instead had a planetary transmission operated by means of two foot pedals, one for its two forward speeds and one for reverse. Since it also had a foot brake, the driver had three pedals in front of him, the one to his left being for forward speeds, the one in the middle for reverse, and the one to his right for the brake. The forward speed pedal when pushed down against the force of a stiff spring which tended to keep it in its up position put the car into low gear and connected the motor with the drive shaft, and when released and returned by its spring to its up position, put the car into high gear and connected the motor with the drive shaft. When held approximately half way between its up and its down positions the car was in neutral, and to keep the pedal in that position so that the car could be left standing unattended with its motor running, a "speed lever" or "clutch cam" was mounted on the hand brake controller shaft, which will be described later, whereby when the hand brake lever was pulled back the forward speed pedal was pushed down to its neutral position. This cam was so positioned on the controller shaft that it put the car into neutral before the hand brakes took effect, and since it had what one of the expert witnesses called "a long dwell portion", progressive movement of the lever to set the brakes did not release the forward speed pedal from its neutral position. So to put the car in motion forward, assuming it to be stationary with the motor running and the hand brake set, the driver put his left foot on the forward speed pedal to hold it in its mid or neutral position, that being the position in which under the above circumstances he would find it, released the hand brake, accelerated the motor with the hand throttle, and pushed the forward speed pedal down. To put the car into high gear after the desired acceleration in low gear was attained, the driver simply took his foot off the pedal and let it spring back to its up position. When reverse was to be used the driver pulled the hand brake lever back until the forward speed pedal was in neutral position, but not far enough to apply the brakes, and then pushed the reverse pedal in the same way that he would push the forward speed pedal for low gear.

As already indicated the car was equipped with both a foot and hand brake. Each was wholly independent of the other, although both took effect only on the rear wheels. The foot brake pedal on depression tightened a friction band around a

drum mounted on the drive shaft inside the transmission housing and therefore exerted its force indirectly on the rear wheels through the drive shaft, differential gears and rear axles. The hand brake operated directly on the rear wheels by expanding shoes against the inside flanges of brake drums attached to each rear wheel. With this construction the driver of a Model T in going down hill could close the throttle to get braking effect from the motor and apply the foot brake too, if necessary, but he could not use both motor and hand brake together because to put on the hand brake of necessity he had to disconnect the motor from the drive shaft—in effect to throw out the clutch.

The device described in the plaintiff's patents altered the Ford structure by connecting the foot brake pedal with the hand brakes in such a way that upon depression of the foot brake pedal the brake shoes on the rear wheels were actuated in addition to the brake on the drive shaft, but the hand lever itself and the "clutch cam" whose function it was to put the forward speed pedal into neutral did not operate. In this way the rear wheel brakes and the transmission brake could be applied simultaneously without disconnecting the motor from the drive shaft.

To understand how the plaintiff accomplished this, further explanation of the details of the Ford construction is necessary.

The Ford Model T hand brake lever, which was provided with a releasable pawl adapted to engage in the teeth of a ratchet so that it could be held in any desired position, was rigidly attached at its bottom end at a right angle to a shaft, the controller shaft already mentioned, which extended across the car about mid-way between the front and rear wheels. This shaft was journaled on the side beams of the frame so that it could be oscillated by its lever. On it was the "speed lever" or "clutch cam" which put the car into neutral and kept it there when the hand brakes were set, and it also had on each end a downwardly extending arm or lever. Holes were bored through the lower ends of these levers the axes of which were parallel to the axis of the shaft, and rods ending in clevises were attached thereto by clevis pins. These rods extended back to each rear wheel and were appropriately connected to the cams which expanded the brake shoes against the brake drums. Thus when the hand brake lever

was pulled back the controller shaft was rocked in its journals, the "speed lever" or "clutch cam" pushed the forward speed pedal into its neutral position, the downwardly extending levers were swung forward pulling on the brake rods, and the rear wheel brakes were set.

The plaintiff modified this construction as follows: He mounted the hand brake lever with its ratchet engaging pawl rigidly on a sleeve set at a right angle to it as the controller shaft had been, and on this sleeve he also rigidly attached the clutch cam. Then he mounted the sleeve loosely on the controller shaft, that is, he put the end of the controller shaft through the sleeve, and connected the sleeve to the controller shaft with a one-way connection so that when the hand brake lever was pulled back the controller shaft was rotated accordingly, but when it was pushed forward the controller shaft did not of necessity have to go with it. With this modification the hand brake system, considered alone, operated in the same way and performed the same functions of putting the car into neutral and applying brakes on the rear wheels that it had previously. Then the plaintiff connected the foot brake pedal with the hand brake controller shaft also by a one-way connection. The plaintiff's patent shows several different kinds of connections of this type, but the only one we need to describe is the one called by an expert witness a "pin and slot one-way actuator with over-running capacity." This consisted of an addition to the foot brake pedal below its pivot of an arm extending "arcuately downwardly and rearwardly thereof" in the end of which he bored a transverse hole; of another arm rigidly attached to the hand brake controller shaft extending "arcuately downwardly and forwardly" therefrom in the end of which he secured a transverse pin; and of a connection between the ends of these arms (they were positioned in line with one another and were of such lengths that the end of the arm on the controller shaft was approximately below the end of the arm on the foot brake pedal) consisting of a rod one end of which was bent at a right angle and the other end of which was threaded to receive a clevis having slots instead of the usual holes. The bent end of the rod passed through the hole in the foot brake pedal extension and was secured in position by some means not shown, probably by a cotter pin, and the pin in the end of the controller shaft arm was "adapted to regis-

ter" in the slots of the clevis threaded onto the other end of the rod. With this construction the plaintiff says in his patent:

"It is obvious that as the controller shaft is rearwardly rotated, [by the hand brake lever] the pin will merely slide upwardly in the slots thereby permitting the controller shaft to be rotated without affecting the transmission brake. When, however, the foot pedal is depressed, the lower ends of the slot will abut the ends of the pin thereby raising up the extension to cause the rotation of the controller shaft to apply the wheel brakes. It is obvious that * * * depression of the foot pedal will cause simultaneous operation of the transmission brake and the rearward rotation of the controller shaft to apply the wheel brakes as explained and that the controller shaft may rearwardly rotate independently of the foot pedal and transmission brake, the ends of the pin merely sliding upwardly in the vertical slots as the controller shaft is rotated without affecting the foot pedal or transmission brake."

If the foregoing were all that the plaintiff's reissue patent disclosed there would be force in the defendant's argument that it covered an attachment useful only on the old Ford Model T with its planetary transmission, which admittedly the defendant never adopted or used, and useless on its Model V 8 which was equipped with the conventional sliding gear transmission and clutch. However, the plaintiff's reissue patent disclosed more than has yet been described. The drawings depict two upwardly extending levers rigidly mounted on each end of the conventional Ford controller shaft opposite the downwardly extending levers already described, and similar thereto, with rods attached to them by clevises, the rods extending forward toward each front wheel. That is to say, the drawings show vertical cross arms on each end of the controller shaft in substitution for the downwardly extending levers of the standard construction with rods extending forward from the upwardly pointing arms and rearward from the downwardly pointing arms. Thus on rotation of the controller shaft by either the hand brake lever or the foot brake pedal the upwardly extending arms would exert a pull on the rods running forward from them just as the downwardly extending arms would exert a pull on the rods running from them toward the rear. There can be no doubt that the rods running forward were for the purpose

of actuating brakes on the front wheels comparable to the rear wheel brakes with which the Ford Model T was equipped—they could have no other purpose—and this conclusion is confirmed by the plaintiff's statement in the specification of his reissue patent that "I have shown in the drawings levers * * * rigidly secured to each end of said controller shafts, on each end of which are pivoted the rods for actuating the rear wheel brakes and the rods for actuating the front wheel brakes where employed, said construction being that of my copending application for Controlling means for four wheel brakes, Serial No. 39,296, filed June 24, 1925, though it is obvious that my invention may be connected to apply brakes to the rear wheels alone as does the usual Ford construction."

From the foregoing we come to the conclusion that the plaintiff in his reissue patent discloses the application by mechanical means of brakes on all four wheels of an automobile through the movement of a single controller shaft which could be actuated by either a hand brake lever or a foot pedal or by both together.

We turn now to the claim in issue, No. 29, and the specific contentions made by the parties with respect thereto. This claim reads:

"In a brake control device, a controller shaft, braking means actuated on rotation of said controller shaft, a hand lever pivotally mounted on the vehicle, a foot pedal pivotally mounted on the vehicle, means connecting said hand lever to said controller shaft to cause rotation thereof to apply the braking means, and means connecting said foot pedal to said controller shaft to cause rotation thereof to actuate said braking means, including a link pivotally connected to said foot pedal having a head threadedly adjustable thereon having a slot in the end thereof near the controller shaft and an arm projecting from said controller shaft having a pin therein adapted to register in said slot."

The defendant argues that this claim covers only the use of an adjustable one-way overrunning connection between the foot brake pedal and the controller shaft, which it says, we think rightly, renders the claim invalid both for anticipation and for lack of patentable invention. The plaintiff, on the other hand, says that he "was the first to realize that if equal pressure was at all times applied through a common actuator (a new mode of operation), all of

911

the brakes would be worn equally and evenly (a new and beneficial result)"; in other words, that while others were using various equalizing devices and multiple controller shafts to cope with the problem presented by the necessary swiveling of the front wheels, he taught the use of "a single controller shaft for all four wheel brakes and by using this single controller shaft you can apply an equal pressure to all four wheel brakes so that they will wear evenly, even if the front wheels are at a swiveling angle during the application of braking pressure." He says that "This concept, in defiance of all the experts in research departments then working all over the world on this problem," was his "flash of genius". And he submits "that claim 29 is specifically limited to this concept and structure" and that the mechanical facts recited above are "definitely and clearly set forth in the claim."

There seem to us cogent arguments against adopting either the plaintiff's or the defendant's position with respect to the construction of the claim in issue. We are of the view that it covers more than the defendant says that it does but not as much as the plaintiff would have us believe. However, its precise meaning is not important because unless the plaintiff's construction is correct the defendant has not infringed, and construed as he would have it, the claim is invalid for the reason that it was anticipated by disclosures in an article by W. F. Bradley and S. Gerster printed in a domestic periodical, "Automotive Industries—The Automobile," issue of June 16, 1921, which was put in evidence as an exhibit at the trial below.

In this article, entitled "Engineering Analysis of European Four Wheel Brakes," the authors, after giving formulae based on experiments conducted by them in Europe, describe in words and by drawings various four wheel brake systems then in use on European cars. Figure 5 is an illustration of the four wheel brake mechanism of the French Darracq car. It is diagrammatic, to be sure, but it nevertheless clearly shows a single transverse controller shaft mounted about midway between the front and rear wheels; a hand lever and a foot pedal each connected by a rod to levers on the controller shaft so that the latter might be rotated by either alone or by both together, and vertical cross arms on each end of the

controller shaft from the extremities of which what appear to be rods but might be cables run to each wheel. In the text describing this structure it is said:

"Darracq has simultaneous operation of the four brakes by pedal or by lever (Fig. 5), but unlike the Delage there is no equalizing mechanism. After long road tests of the two types it is difficult to determine which has the advantage in this particular respect. On the Darracq it is necessary to adjust the two front and the two rear wheels together, but once adjusted there appears to be no tendency for them to wear unevenly. On the Delage, on the other hand, any differences between the two wheels forming a pair will be taken care of by the differential. Obviously the Darracq is a cheaper production job."

No mention of lost motion connections in the Darracq structure is made in the text, but in Figure 5 one is indicated between the hand brake lever and the controller shaft where it would obviously be essential because otherwise the hand brake lever would swing violently back every time the foot brake was applied and the brakes would be kept on by the ratchet with the result that the hand brake would have to be manually released after each application of the foot brake. Since there is no ratchet to hold the foot brake on, and since the foot pedal is short and near the floor, and the hand brake is used principally for parking, no great inconvenience would result if the foot brake pedal moved down whenever the hand brake was applied as it would in the structure shown. However, it would clearly be a simple routine matter not calling for the skill of an inventor to modify the Darracq structure by adding any one of the old and well known one-way connections between the foot brake pedal and the controller shaft if thought desirable. The fact that Figure 5 does not clearly show rods as used by the plaintiff instead of cables to connect the controller shaft cross arms to the brake mechanism on the wheels does not prevent anticipation. Since a cable is obviously as effective as a rod to transmit a pull, it cannot be patentable invention to substitute one for the other to actuate brakes.

Drawings [1] can anticipate as well as words (Jockmus v. Leviton, 2 Cir., 28 F. 2d 812, 814; In re Bager, 47 F.2d 951, 953, 18 C.C.P.A., Patents, 1094; In re Boyd, 55

---

[1] The publication relied upon antedated even the plaintiff's original application for a patent by very nearly four years.

F.2d 493, 494, 19 C.C.P.A., Patents, 890) if they teach to the art what the patentee claims as his invention, and here there can be no doubt from an inspection of Figure 5, even without the text quoted above, that it would show to any draftsman or mechanic what the plaintiff says is covered by his claim 29.

The judgment of the District Court is affirmed.