**Lynne A. SMITH, d/b/a Sweater Swing Co., Plaintiff,**

v.

**J. H. SMITH CO. Inc., Defendant.**

**Civ. A. No. 65–839.**

United States District Court,
D. Massachusetts.

March 30, 1970.

Cedric W. Porter, Porter & Meyer, Boston, Mass., for plaintiff.

John J. Dempsey, Chapin, Neal & Dempsey, Springfield, Mass., for defendant.

## MEMORANDUM

FRANK J. MURRAY, District Judge.

This case came on to be heard on plaintiff's complaint of infringement of United States Letters Patent No. 2,714,978 entitled "Device for Drying Sweaters". Defendant denied infringement in its answer, and asserted invalidity of the patent in its counterclaim. Jurisdiction is invoked under 28 U.S.C. section 1338 (a). This memorandum contains the findings and rulings of the court. Fed. R.Civ.P. 52(a).

Plaintiff, a resident of California and doing business as Sweater Swing Co., was issued the patent in suit on August 9, 1955 and is the sole owner. The defendant Corporation first made and sold the device alleged to infringe the patent in June of 1964.

Examination of plaintiff's invention shows a four-cornered flexible, porous fabric sheet held in tension by a pair of crossed members joining diagonally opposed corners at pockets or receptacles formed in the sheet. Either the crossed members themselves or other means are used to elevate the sheet above any surface to allow air to circulate about the sheet.

By a pretrial stipulation the parties agreed the issues to be decided are validity and infringement,[1] and that plaintiff and defendant manufacture devices for drying sweaters and sell such devices to mail order houses. The parties also

---

1. The stipulation directed the court's attention to claim 1 on the question of infringement. Claim 1 reads:

In a drying device, a four cornered member formed of porous flexible material, pockets formed on each of said four corners, a pair of elongated flexible members having ends adapted to be inserted into said pockets, said elongate members having a length substantially equal to the distance between diagonally opposed corners, the ends of one of said elongate members being inserted in the pockets of one pair of diagonally opposed corners, and the ends of the other of said elongate members being inserted in the pockets of the other pair of diagonally opposed corners, said elongate members serving to place said four cornered member under tension to form a substantially flat surface, and means for supporting said four cornered member in a substantially horizontal plane to allow air to circulate freely about the same to facilitate the drying of articles placed thereon.

agreed that a minor change in design of defendant's device raises no additional questions to the issues of validity or infringement. Without approving or disapproving the latter stipulated "fact", the court proceeds to the issue of validity.

Defendant's bifurcated attack on plaintiff's patent raises questions of prior art anticipation under 35 U.S.C. section 102 and obviousness under 35 U.S.C. section 103.[2] Copies of the patent and the file references cited therein are in evidence, but the file wrapper and the Patent Office file contents of the patent are not. Ten other patent references, not cited by the Patent Office, including Japanese Utility Device Application No. 11582/1940, were introduced to rebut validity.

Turning first to the question of anticipation, the defendant relies on the ten references illustrating patented drying devices (Japanese Utility Device Application, *supra;* British Patent No. 5358—Davidson; and United States Patent No. 1,454,694—Schwartz et al), and patented devices having fabric under tension by diagonal members (United States Patent No. 2,146,517—Thompson; United States Patent No. 1,760,548—Flentye; German Patent No. 316,138—Pitschke et al; United States Patent No. 2,652,656—Glasser; United States Patent No. 713,381—Battersby; United States Patent No. 1,338,124—Dale; and United States Patent No. 1,172,439—Crozier), predating with one exception [3] the earliest date of invention by plaintiff.[4]

"The test for anticipation is whether the prior printed publication (or patent) describes the invention with sufficient clarity and specificity so that one skilled in the art may practice the invention without assistance from the patent claimed to have been anticipated." Columbia Broadcasting System v. Sylvania Electric Products, Inc., 415 F.2d 719, 725 (1st Cir. 1969), cert. denied, 396 U.S. 1061, 90 S.Ct. 755, 24 L.Ed.2d 755 (1970), and cases cited therein. The drawings accompanying the cited art may, of course, be sufficient to show anticipation, particularly where, as in this case, the invention is of a simple

---

Claim 2, written as an independent claim, substitutes "*a strap attached to each of said corners for tying said device to said clothesline to thereby suspend the same*" for the "*means for supporting said four cornered member*" in claim 1. (italics added.) Claim 3, dependent on claim 2, further includes "means * * * to prevent said articles from shrinking while they are being dried". Claim 4, dependent on claim 3, further defines the means named in claim 3 as "S–shaped hook members". The court will consider claim 1 alone as to infringement and claims 1 through 4 as to validity in accordance with the stipulation of the parties.

2. The applicable statutory provisions follow in pertinent parts.
35 U.S.C. section 282:
A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it. * * *

35 U.S.C. section 102:
A person shall be entitled to a patent unless—
(a) the invention was * * * patented or described in a printed publica-

tion in this or a foreign country, before the invention thereof by the applicant * * *.
(b) the invention was patented or described in a printed publication in this or a foreign country * * * more than one year prior to the date of the application for patent in the United States * * *.
35 U.S.C. section 103:
A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3. United States Patent No. 2,652,656—Glasser.

4. Plaintiff, in explaining the manner in which the invention was made, testified " * * * I started fooling around with the idea [of a sweater dryer] in 1953 and and I tried various ways of doing it". (TR pp. 13–14).

mechanical device. Columbia Broadcasting System v. Sylvania Electric Products, Inc., *supra* at 726; Des Rosiers v. Ford Motor Co., 143 F.2d 907 (1st Cir. 1944). But the ten references offered by the defendant do not reveal anything more significant than the Bidwell and McKee[5] patents which the Patent Office considered. Furthermore, the Japanese art relied upon by defendant shows no more than Bidwell. On this showing the court is not satisfied that the statutory presumption of validity has been overcome. Marston v. J. C. Penney Co., Inc., 353 F.2d 976 (4th Cir. 1965).

But defendant also contends that the subject matter of plaintiff's patent was obvious to one skilled in the art at the time of the making of the invention. The guidelines set forth in Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S. Ct. 684, 15 L.Ed.2d 545 (1965), are referred to:

> [T]he scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. * * * Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. * * *

Bidwell teaches the tensioning of a flexible material by distributing forces along parallel sides of the material. Flentye and Battersby teach the tensioning of a flexible material by transverse members joining opposing corners of the material. Harvey shows tapes for support, and McKee and Flentye illustrate means to prevent shrinking. These references with the drying devices of Davidson and Schwartz represent articulate illustrations of the scope and content of the prior art.

The major differences between plaintiff's device and the prior art are plaintiff's utilization of "pockets" at the corners to accept the transverse members and "means for supporting" the flexible material "in a substantially horizontal plane to allow air to circulate freely about the same * * *."[6] Plaintiff testified that the pockets were utilized to simplify manufacture of the device,[7] and that the "means for supporting * * * in a substantially horizontal plane" could be either the tapes attached to each corner of the tensioned flexible material or the tensioned device itself.[8]

The level of ordinary skill at the time of the making of the invention is illustrated by the prior art cited. The use of transverse tensioning members for porous flexible materials was known for many years. The utilization of such a structure for a drying device where there are no inherent difficulties, no unforeseen results and no different or unusual means of producing the same result can be no more than an obvious step in the development of drying devices.[9] Kites

---

5. United States Patent Nos. 552,229 and 2,160,337, respectively.

6. Claim 1, United States Patent No. 2,714,-978.

7. Plaintiff: "Later on I thought that [a prior model which included grommets at the corners of the flexible material] was kind of complicated because it took four grommets and four brads * * *." (TR p. 14).

8. Q.: "[W]hat means is disclosed in the patent for supporting this in a horizontal plane?"
    A.: "The hanging up [with the tapes] did it and the laying down did it. It

didn't make any difference. * * *" (TR p. 30).

9. The relevant secondary considerations such as longfelt need and commercial success were discussed at length by plaintiff. While acknowledging the commercial success of plaintiff's device in the mail order business, the court is not convinced that the sweater drying device was not obvious to a person skilled in the art and undertakes the above determination with full awareness of the "beguiling" effects of hindsight. *See* Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969).

and tensioned drying devices, for example, had existed for many years before the invention by plaintiff. The supporting elements (the tapes or the device itself) and the means to prevent shrinking as set forth in claims 2 through 4 are clearly disclosed in Harvey, McKee, Flentye and Schwartz, and were, of course, known to those in the drying device field. One skilled in the art of making drying devices could have, with the references available here, made "'the combination of elements claimed without the exercise of invention'". Reeves Bros., Inc. v. U. S. Laminating Corp., 282 F.Supp. 118, 134 (E.D.N.Y.1968). The court concludes the invention as a whole was obvious within the meaning of 35 U.S.C. section 103 and the patent is, therefore, invalid.

■ Although a finding of invalidity would dispose of this case, the court proceeds to the question of infringement. *See* Trimble Products Inc. v. W. T. Grant Co., 283 F.Supp. 707 (S.D. N.Y.1968), aff'd, 404 F.2d 344 (2d Cir. 1968); *cf.* Colourpicture Publishers v. Mike Roberts Color Productions, 272 F. Supp. 280, 282 (D.C.Mass.1967), reversed on other grounds, 394 F.2d 431 (1st Cir. 1968), cert. denied, 393 U.S. 848, 89 S.Ct. 134, 21 L.Ed.2d 118 (1968). It should be noted here, however, that no evidence of damages was offered by plaintiff on the issue of infringement. The claims are the measure of the patent grant, and to infringe the defendant's device must contain every element and limitation in the claims at issue. The claims are not limited by the exact structure disclosed in the specification. The law merely requires the inventor to describe his invention in such terms as to enable one skilled in the art to make and use the same, and to set forth the best mode contemplated by the inventor for carrying out the invention. 35 U.S.C. section 112. In interpreting a claim the court will take notice that a patentee is his own lexicographer, and he alone may describe the metes and bounds of his invention. He may not, however, transform the claim into "a nose of wax which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express". White v. Dunbar, 119 U.S. 47, 51, 7 S.Ct. 72, 30 L.Ed. 303 (1886).

■ Focusing on claim 1, defendant makes much of the facts that, in the strict sense, (1) his device does not include "pockets", (2) there is no "pair of elongated flexible members", (3) his elongated members are not of a length "substantially equal to the distance between diagonally opposed corners", and (4) there is no "means for supporting said four cornered member in a substantially horizontal plane". Points (2) and (3) may be disposed of summarily. In making something in two parts, defendant cannot avoid infringement of an article made in one piece. Abbott v. Barrentine Manufacturing Co., 255 F.Supp. 890, 899 (N.D.Miss.1966), and cases cited therein. Likewise, to make a horizontal item arcuately without achieving a different result, or achieving the same result by a different or dissimilar means, cannot avoid infringement. Defendant's point that his grommets do not come within the penumbra of the word "pockets" is without merit. Pocket is "a hollow, cavity * * *, receptacle" or container.[10] Defendant's grommets are used as receptacles. Defendant's final point is that his device does not include "means for supporting" the "four cornered member in a substantially horizontal plane". His device, however, includes a central hub. In conjunction with the members anchored to it and extending radially from it, the hub serves to place the "four cornered member" in tension and to support it in a substantially horizontal plane.

■ If the patent were valid, the defendant has infringed claim 1. The

10. The Random House Dictionary of the English Language. New York: Random House, 1967.

court is not unmindful that this conclusion is reached in the absence of viewing the file wrapper, which was not in evidence. Columbia Broadcasting System v. Sylvania Electric Products, Inc., *supra*, 415 F.2d at 729, 730. Here, however, the patent and drawings substantially encompass defendant's device. Plaintiff's pockets and defendant's grommets both receive the ends of the respective elongated members at diagonally opposed corners of the porous material, and hold the ends in stationary position so that the flexible material may be maintained under constant tension. The function and result achieved by the grommets is not greater and certainly not less than the pockets. Both patent and defendant's device provide means for supporting the flexible material in a substantially horizontal plane: the patent by means of tapes or the tensioned device itself, and defendant's device by means of the central hub as it is coupled to the elongated members. Thus the function and result achieved by each element of the defendant's device is the same as that of the patent. While the means of defendant's device differ in a literal sense from the invention, it is shown that a better result has not been produced by the device.

When the specification is considered, the language of the claim is neither ambiguous nor inordinately broad. Hence, the court's construction of this patent applies the doctrine of equivalents narrowly. This is further confirmed when there is considered the references cited in the file of the patent and the prior art relied upon by defendant. File wrapper estoppel has not been interpreted to preclude application of a narrow range of equivalents, particularly where, as in the instant case, the invention has enjoyed considerable commercial success. Southern Textile Machinery Co. v. United Hosiery Mills Corp., 33 F.2d 862, 865–866 (6th Cir. 1929). The patent here is distinguishable from the Guiffrida patents in Columbia Broadcasting System v. Sylvania Electric Products, Inc., *supra*,

415 F.2d at 728–730, and this case, in the judgment of the court, may be finally disposed of in the absence of the file wrapper.

Plaintiff's patent No. 2,714,978 is hereby declared invalid. Consequently, plaintiff's prayers for preliminary and final injunctions, and award of damages are hereby denied. The court has considered prayers for costs and reasonable attorney fees, and determines that this is not an exceptional case for an award of attorney fees (35 U.S.C. section 285).

Hence, neither costs nor fees are awarded either party.