**TOOL RESEARCH AND ENGINEERING
CORPORATION, Appellant,**

v.

**HONCOR CORPORATION, Appellee.
No. 20002.**

United States Court of Appeals
Ninth Circuit.

Sept. 29, 1966.

Rehearing Decided Nov. 8, 1966.

Thomas P. Mahoney, Robert D. Hornbaker, Mahoney, Halbert & Hornbaker, Los Angeles, Cal., for appellant.

Wm. Douglas Sellers, Richard D. Sellers, Pasadena, Cal., for appellee.

Before JERTBERG and ELY, Circuit Judges, and SMITH, District Judge.

RUSSELL E. SMITH, District Judge:

Plaintiff [1] appeals from a judgment holding invalid J. E. Green et al. Patent No. 2,975,263, a patent on a method of

---

1. The word "plaintiff" will be used to designate plaintiff and its predecessors.

making metallic honeycomb core. The purpose of the core is to maintain the surface sheets of panels used in aircraft and missiles in a spaced relationship with each other. The district court held that the prior art did not teach plaintiff's claimed method but that by reason of the plaintiff's sales of honeycomb core the rights to a patent on the process were lost under Section 102(b), Title 35 U.S.C.[2]

All the questions in this appeal revolve around two methods of producing honeycomb core—the flat-pack method and the preformed or pre-expanded method.

Honeycomb core produced by either method looks like this:

HONEYCOMB CORE

CELLS

NODAL AREA

The text of the application for the patent, filed July 6, 1954, was almost exclusively devoted to the flat-pack method and described a process which appellant's brief fairly summarizes as follows:[3]

"A first set of flat electrodes or fingers is placed on the top of the table and a flat sheet of stainless steel foil is placed over the first set of fingers. The first set of fingers is connected to a welding transformer. The fingers resemble a comb, and a similar second set of flat fingers is placed over the first sheet of foil with the fingers of the second set located in between the fingers of the first set of fingers. A

2. "A person shall be entitled to a patent unless * * * (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States. * * *" 35 U.S.C. § 102.

3. pp. 13–14 of Appellant's Brief.

second flat sheet of stainless steel foil was then placed over the second set of fingers and a welding gun connected at the other side of the transformer and incorporating a welding roller, was rolled across the electrodes or fingers of the lower set of fingers to push the second sheet into contact and then weld the two sheets of foil to each other at adjacent points.

The subsequent steps of the flat-pack method entailed the removal of the lower set of electrodes and its placement on the upper welded sheet of foil and the disposition of successive sheets of foil on the uppermost electrode. The successive sheets were then welded by the use of the welding gun. After the welding was completed, the pack of welded foil was expanded to form the cells of the honeycomb core."

*FIG.6.*

Except that Figure 6 (Figure 6 of the patent application) shown above depicts the core produced by either method (the pins 35 would not be shown in a drawing relating to the preform method), the drawings in the patent relate solely to the flat-pack method and illustrate it as follows:

*FIG.3.*

Figure 3 (Figure 3 of the patent application) shows the flat foil (No. 16), the fingers (No. 21), the welding gun (No. 28) and the seam welds (No. 17). The drawings here copied do not show it, but the fingers are inter-connected to form what is referred to as a comb. It is clear from the text and the drawings that the structure must be expanded after the welding. This is explained in the patent application:

> The final step is to expand the shaped structure. As indicated in Figure 6, this is accomplished by engaging the lowermost sheet (16) with stationary pegs or pins (35) and exerting a uniform pull on the uppermost sheet (16) to produce the structure shown. The expanded core is then utilized in the usual manner, usually being provided with skin elements (not shown) to form the desired sandwich structure.[4]

The only reference in the original application to the preformed method was this:

> Additionally, core in the already expanded condition has been produced in accordance with said method. Here, however, the sheets were pre-formed and the comb fingers were of square configuration.[5]

After three years of the usual sparring around in the patent office, plaintiff, in June, 1957, cancelled all claims which at that time remained in the application, and for the purpose of interference copied two claims from the previously granted Wasilisin Patent No. 2,780,716. The effect of this was to abandon all claims relating to the flat-pack method and to rely entirely upon a method using pre-formed foil.

Claim No. 1 of the plaintiff's patent as finally allowed discloses this method and is as follows:

> The method of making seam-welded honeycomb core comprising the steps of placing a section of corrugated metal foil on a set of spaced, substantially horizontally disposed fingers of electrically conductive material, so that the lower portions of the corrugations extend down between the fingers while the upper portions of the corrugations rest upon the fingers, placing a second set of fingers in the lower portions of said section, placing a second section of corrugated metal foil on said second set of fingers so that the lower portions of said second section are in alignment with and contacting the upper portions of the first-mentioned section, placing an electrode in at least one lower portion of said second section of foil at a location directly above at least one of the fingers of the first-mentioned set, moving said electrode along said lower portion substantially in alignment with the longitudinal axis of the respective finger of said first-mentioned set while passing electric current between said electrode and said finger through both sections of foil whereby to seam-weld abutting portions of said first and second sections together.

The claims copied from Wasilisin were held to be prior to Wasilisin by the Board of Patent Interference.

That there are differences in the two methods of producing honeycomb core is irrefragable. The one method uses flat foil, employs relatively flat fingers, requires pressure from the welding wheel to bend an upper foil to meet a lower one, and requires a mechanical step of expansion. The other method uses pre-corrugated foil, square fingers, requires no pressure to bring the area to be welded together, and eliminates the expansion step. The pre-formed method lends itself more readily to automation and produces a more uniform core.

The District Court concluded that the Green patent 2,975,263 was invalid because directed to a subject matter in public use more than one year prior to the

---

4. P. 3, lines 11–18 of the letters patent No. 2,975,263.

5. P. 3, lines 26–30 of the letters patent No. 2,975,263.

filing of the application. This conclusion was based on these findings:

## XI.

The "said method" using flat material and known as the "flat-pack method" was in public use in 1952 and early 1953, more than one year prior to the filing of Green '263 on July 6, 1954.

## XII.

The Foster [plaintiff's predecessor] sales of core made by "said method" were without limitation as to secrecy, or otherwise, and without any obligation on the part of the buyer to report to Foster upon what had been done with the core purchased.

## XIII.

There was no change or experimentation in "said method" in the making of core using flat material after 1952, and the core made and sold was by a method in a perfected state.

■ There is sufficient evidence to support Findings Nos. XII and XIII and Finding No. XI to the extent that that finding relates to the flat-pack method. There were no sales of core produced by the pre-formed method made more than one year prior to the filing date of July 6, 1954.

The record fairly shows that during the period of 1952, 1953 and 1954 the use of welded stainless steel honeycomb core was relatively new. Major aircraft producers were testing it and experimenting with machines to produce it. During this period standards were being developed for the core. Plaintiff using the flat-pack method prior to June, 1953 produced and filled at least four separate orders for core. The money value of the core definitely shown to have been sold was not great, somewhere between five and six hundred dollars. Some core produced by the flat-pack method was given away. It is probable that most, if not all, of the core sold and given away was used by the purchasers for test and experimental purposes, but certainly plaintiff put no limitation on the use to be made of it. The sales of core were sufficient to put the flat-pack method into public use and we cannot say on the record that the District Court erred in not finding the use experimental.

■ Having in mind the differences in material used, the steps of production, the adaptability to automation, and the finished product, did the sales of the core produced by the flat-pack method put the pre-formed method in public use? The guide lines, so far established are these: One sale or gift of an article is sufficient to constitute a sale or public use.[6] Where an article is sold the use is public even though the invention be hidden physically or chemically as a part of a larger article.[7] Likewise where an article is sold, there is a sale or public use of the article itself and of all improvements on the thing which would be obvious to one skilled in the art.[8] The holding in Stauffer v. Slenderella Systems of California, 254 F.2d 127 (9th Cir. 1957), relied upon by appellant is not contrary. See footnote 2, page 128, and the next to the last paragraph at page 130. The language in the opinion appearing to be to the contrary is dictum, and not necessary to the holding of the case.

■ Where a process patent is involved and there is a sale of a product of the process, such is a public use of the

6. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141 (1887).

7. Egbert v. Lippman, 104 U.S. 333, 26 L. Ed. 755 (1881); Hall v. Macneale, 107 U.S. 90, 2 S.Ct. 73, 27 L.Ed. 367 (1882); Metallizing Engineering Co. v. Kenyon Bearing and A. P. Co., 2 Cir. 1946, 153 F.2d 516, cert. denied, 328 U.S. 840, 66 S.Ct. 1016, 90 L.Ed. 1615 (1946).

8. International Tooth Crown Company v. Gaylord, 140 U.S. 55, 11 S.Ct. 716, 35 L.Ed. 347 (1891). See Dix-Seal Corporation v. New Haven Trap Rock Co., D. Conn.1964, 236 F.Supp. 914, for an able discussion of the problem.

process if the product sold discloses the process,[9] or even if it does not.[10]

■ None of these rules quite compel a result here—here there was no sale within the meaning of § 102(b) of the pre-formed core as such, nor was there under any view of the evidence a public use of the exact method patented because, as indicated, the flat-pack method was abandoned in the patent office and the patent issued on claims describing the pre-formed method.

On the facts, the case which most nearly resembles this one is Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141 (1887) where the court determined that the sale of a product made by a machine not identical with the one patented constituted a public use. There the patent covered a machine for making levers for boot buckles. The basic machine was used by the inventor in his own established business, and during a period of three years between 1874 and 1877 he made some 7,000,000 buckle levers with it. There was no real effort to keep the use of the machine secret. Within a year prior to the application for a patent the inventor made changes of which the court said:

> The alterations made in the machine in question, however useful, were not vital to its organization. Without them, it could and did work so as to be commercially successful.[11]

The court finally concluded that the use was not experimental and that the patentee had therefore unduly delayed filing his patent application. We deduce from this case that not every improvement is sufficient to take a prior invention out of the operation of Section 102(b). The question then is—what degree of improvement is necessary?

■ If the purpose of 102(b) is to prevent an inventor from combining a period of monopoly resulting from a public exploitation of a secret use with the period of monopoly protection afforded by the patent,[12] then we see no reason for devising a different test for a process used than for an article sold or a publication made. In either case the invention should fall within 102(b) if the differences between the claimed thing and the sold or used thing are obvious to one skilled in the art. In either case unless the improvements would be patentable, the inventor has used or disclosed his invention contrary to the purpose of Section 102(b).

We agree with the district court that the process was in public use. Whether one method or two be involved and whether we treat the question as one of fact or law, the differences between the flat-pack method and the pre-formed method did not amount to an invention.

Once the flat-pack method is disclosed, we think that the appearance of the completed core in itself suggests to one skilled in the art the use of pre-corrugated foil.[13] After such suggestion the shape of the fingers is dictated by the shape of the corrugation. The requirements for pressure on the welding wheel and an expansion step simply disappear.[14]

9. Soffron v. S. W. Lovell & Company, Cir. 1, 1957, 246 F.2d 769.

10. Metallizing Engineering Co. v. Kenyon Bearing & Auto Parts Co., supra, note 7; Conmar Products Corp. v. Universal Slide Fastener Co., 2 Cir. 1949, 172 F.2d 150; U. S. Chemical Corporation v. Plastic Glass Corp., 3 Cir. 1957, 243 F.2d 892, cert. denied, 355 U.S. 836, 78 S.Ct. 59, 2 L.Ed.2d 47.

11. Smith & Griggs Mfg. Co. v. Sprague, supra, 123 U.S. at p. 265, 8 S.Ct. 122.

12. Metallizing Engineering Co. v. Kenyon Bearing & Auto Parts Co., supra, note 7, 153 F.2d at p. 520.

13. The prior art suggests the use of pre-corrugated metal. Smith (2,324,435) and Partiot (2,445,801) patents.

14. At one stage plaintiff seems to have been in agreement. In plaintiff's closing brief in the interference proceeding, it was urged:

> Therefore it is readily apparent that Green et al, [plaintiff's predecessor], the senior party, rely on the entire disclosure of the application including the

Hence we hold that the sales of core made by the flat-pack method constituted a public use of the pre-formed method and that under Section 102(b) the Green '263 patent is invalid. The judgment is affirmed.

specification and the drawings [the drawings except for Figure 6 related to the flat-pack method] to support their right to make the two counts of the interference [both referring to the pre-form method] and *it is readily appar-* *ent to one skilled in the art how the teachings of the method would be applied to the manufacture of pre-formed core utilizing sections of corrugated metal foil.* (Emphasis added)