**HARRINGTON MANUFACTURING COMPANY, INC., Plaintiff,**

v.

**POWELL MANUFACTURING COMPANY, INC., Defendant.**

**No. 82–8–Civ–2.**

United States District Court, E.D. North Carolina, Elizabeth City Division.

Nov. 27, 1985.

Harvey B. Jacobson, Jr., Fleit, Jacobson, Cohn & Price, Washington, D.C., for plaintiff.

George M. Sirilla, Cushman, Darby & Cushman, Washington, D.C., for defendant.

ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This is an action for injunctive relief and damages arising out of defendant's alleged infringement of four patents owned by Harrington Manufacturing Company, Inc., (hereinafter "Harrington"). All four patents are directed to various features of automatic tobacco harvesters, or tobacco combines. The matter presently before the court involves only United States Pickett, et al Patent No. 3,507,103 entitled TOBACCO HARVESTER (hereinafter "Pickett

Patent"). The defendant, Powell Manufacturing Company, Inc. (hereinafter "Powell"), has moved for partial summary judgment alleging that claim 8 of the Pickett Patent is invalid.

The record shows that the application for the Pickett Patent was filed in the United States Patent and Trademark Office on October 2, 1967 and was granted April 21, 1970. There are three inventors listed in the Pickett Patent; William L. Pickett, Linwood J. Cooper, and Joseph J. Harrington. The Pickett patent is essentially a mechanized tobacco harvester that channels each tobacco stalk into a defoliation head where rubber-like blades, twisted into spiral shapes, rotate and strip, wipe or rub the leaves off the stalk in a downward wiping action. The leaves then fall on belts and then are conveyed to boxes located at the rear of the machine. What sets the Pickett patent apart from all previous attempts at mechanized harvesters, however, is its ability to accommodate tobacco stalks that are out-of-line or dog-legged and, to assist the driver in tracking the row of tobacco being harvested. This is accomplished by suspending the defoliator heads from the upper frame structure, thereby permitting the defoliation heads to swing laterally. Prior to the Pickett harvester the defoliator heads and guide elements on other harvesters were fixed on the frame so that any stalk that was out of line was knocked down and broken by the mechanized harvester. This so-called "swinging head" feature of the Pickett patent is found in claim 8 and distinguishes this harvester from the design of predecessors.

Powell contends that the Pickett patent is invalid under 35 U.S.C. § 102(b) which reads as follows:

A person shall be entitled to a patent unless—

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States...

Powell's invalidity argument under § 102(b) is predicated upon the ground that more than one year prior to the date upon which the patent application was filed the tobacco harvester, including the swinging head feature described in claim 8, allegedly (1) was in public use; (2) was on sale within the meaning of § 102(b); and (3) was described in a printed publication with sufficient clarity to enable one skilled in the art to reproduce the harvester. Anyone of these allegations, if proven, would serve to invalidate the patent.

There is no dispute that the patent application was filed on October 2, 1967, therefore making the critical date for § 102(b) purposes October 2, 1966. Powell's allegations of public use and "on sale" activities pertaining to the Pickett patent before the critical date center around an article written by Clyde Osborne about the harvester that appeared in the September 26, 1966 issue of *The Charlotte Observer*. A copy of this article has been submitted as evidence by Powell.

Powell has also submitted as evidence a deposition of Clyde Osborne taken on March 18, 1985, in which he testified, in part, as follows:

(1) That prior to writing the September 26, 1966 article, Mr. William Pickett invited him to visit Pickett's tobacco farm in Scotland Neck, North Carolina. Osborne's understanding was that Pickett wanted to demonstrate his newly developed tobacco harvester and that Pickett wanted publicity for this harvester.

(2) At Pickett's farm, Osborne watched the Harvester in operation for a half-hour and took photographs.

(3) That Osborne saw the defoliation head of the harvester in operation and that it channeled each stalk into the machine where the leaves were rubbed off.

(4) That Osborne wrote the September 26, 1966 article after returning from Pickett's farm and that the article was based on the interview and demonstration with Pickett.

(5) That during Osborne's interview with Pickett, Pickett told him that he

thought the Harvester would be very helpful to farmers in the region and the "machine will cost between $6,000 and $7,000".

Powell has also submitted an affidavit of Mr. Robert Wilson, President of Powell, that states that prior to October 2, 1966 and after he read the Osborne article of September 26, 1966, he visited Mr. Pickett. Further, Mr. Wilson states that Pickett "allowed me to freely examine his tobacco harvester" and "let me observe it operating in a tobacco field removing tobacco leaves." There is also testimony that Pickett demonstrated the harvester to both Dr. William Splinter and Dr. Charles Suggs, two professors who did early research in an attempt to build a mechanized tobacco harvester.

■ Claim 8 of the Pickett patent has previously been held valid in *Harrington Manufacturing Company, Inc., v. Taylor Tobacco Enterprises, Inc.*, 664 F.2d 938 (4th Cir.1981). Powell's basis for the present allegation of invalidity of the Pickett patent is new evidence that was not known by the court or the *Taylor* defendants in the prior litigation. This new evidence centers around *The Charlotte Observer* article written by Clyde Osborne. A prior judgment of patent validity against an unrelated defendant does not collaterally estop another defendant from attacking the validity of that patent in a subsequent law suit. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). This is particularly true "when additional, prior or other evidence on patentability is produced in the subsequent suit." *Stevenson v. Sears, Roebuck & Company*, 713 F.2d 705, 711, n. 5 (Fed.Cir.1983). Therefore, while the court notes that the Pickett patent has previously been held valid, the weight given to such holding is greatly diminished in light of the new evidence in this case.

"Summary judgment is as appropriate in a patent case as in any other case." *Barmag Barmer Maschinenfabrick AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed.Cir.1984). For summary judgment to be appropriate there must be no genuine issue as to the *material* facts in the case (emphasis added). The party opposing summary judgment may not merely rely on its denials and the pleadings, but must come forward with some admissible evidence in an offer of proof to challenge the movant's claim of undisputed material facts. (Rule 56(e) F.R.Civ.P). If the party resisting summary judgment fails to draw out a conflict in the evidence on the material facts, then summary judgment will lie. Mere denials or conclusory statements are insufficient. *Barmag Barmer, supra*, at 836; *Union Carbide Corporation v. American Can Corporation*, 724 F.2d 1567, 1571 (Fed.Cir.1984).

When, as in this case, a defendant in an infringement suit challenges the patent's validity on the ground that the claimed invention was in public use prior to one year before the patent was applied for, that defendant has the burden of showing by clear and convincing evidence that the invention was, in fact, in public use. "Even a single public use, or only a placing on sale is sufficient to invalidate a patent under 35 U.S.C. § 102(b)." *Minnesota Mining & Manufacturing Company v. Kent Industries, Inc.*, 409 F.2d 99 (6th Cir.1969); *Tool Research & Engineering Corporation v. Honcor Corporation*, 367 F.2d 449 (9th Cir.1966), *cert. denied*, 387 U.S. 919, 87 S.Ct. 2032, 18 L.Ed.2d 972 (1967). Once a prima facie case of such use has been made out, however, the burden of going forward with the evidence shifts to the plaintiff, who must then show that the use .was an experimental use. *Hycor Corporation v. Schlueter Company*, 740 F.2d 1529, 1535 (Fed.Cir.1984); *TP Laboratories, Inc., v. Professsional Positioners, Inc.*, 724 F.2d 965, 971 (Fed.Cir.1984). On a motion for summary judgment once the "experimental use defense is raised by the patent holder, the burden is on the alleged infringer to demonstrate that no genuine issue of material fact exists with respect to such defense and. that he is entitled to judgment as a matter of law." *Watts v. University of Delaware*, 622 F.2d 47, 51 (3rd Cir.1980),

quoting *Long Corporation v. Raymond International*, 622 F.2d 1135, 1144 (3rd Cir.1980). *See also Kelley Manufacturing Company v. Lilliston Corporation*, 180 U.S.P.Q. 364 (E.D.N.C.1973).

In this case the fact that William Pickett demonstrated the Pickett harvester to Mr. Osborn, Mr. Wilson and Drs. Splinter and Suggs, on separate occasions prior to the critical one year period (i.e., October 2, 1967), is uncontested. There is no denial by plaintiff's witnesses that the tobacco harvester was shown to these individuals and that it was the subject of Mr. Osborne's article. However, the plaintiff asserts that the co-inventors were not aware of such demonstrations. Harrington's principal contention is that these incidents did not constitute public use, but rather, experimental use. Further, Harrington argues that the harvester shown by Mr. Pickett was only a second prototype and it was not until the third prototype proved satisfactory that the inventors applied for a patent.

■ The law is clear that "In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use or sell the patented invention without the consent of the co-owners." 35 U.S.C. § 262. *Willingham v. Star Cutter Company*, 555 F.2d 1340, 1344 (6th Cir. 1977). Moreover, an invalidating public use or sale of the invention may even take place by a third party without the consent of the patentee. *Andrews v. Hovey*, 123 U.S. 267, 8 S.Ct. 101, 31 L.Ed. 160 (1887); *Hobbs v. United States Atomic Energy Commission*, 451 F.2d 849 (5th Cir.1971) (A more liberal standard than presented by the facts of this case, where the public use was by a co-owner). Therefore, whether or not Joseph H. Harrington and/or Linwood Cooper, Mr. Pickett's co-inventors, knew of Mr. Pickett's alleged public use is immaterial in this matter.

The issue of whether or not Pickett's uncontroverted use was public or experimental "must be determined by considering the totality of the circumstances." *Hycor Corporation v. Schlueter Company*, 740 F.2d 1529, 1535 (Fed.Cir.1984). Further, in order for a patentee to show experimental use, he must prove that the experiment to improve and perfect the invention was the real purpose in such public use and not merely incidental and subsidiary to its use. *Smith and Griggs Manufacturing Company v. Sprague*, 123 U.S. 249, 266, 8 S.Ct. 122, 130, 31 L.Ed. 141 (1887); *In re Smith*, 714 F.2d 1127, 1134 (Fed.Cir.1983). "In determining the purpose of the alleged experimental use, objective evidence indicating a purpose for such testing and experiment is generally preferred. An inventor's subjective intent is of minimal value." *In re Smith, supra* at 1135.

■ In this case the evidence shows that Mr. Pickett invited Mr. Osborne of *The Charlotte Observer* out to his farm to witness a demonstration of the newly developed tobacco harvester. Mr. Osborne has testified that he was under no obligation to secrecy. In fact, Osborne testified that Pickett wanted publicity. Harrington offers no evidence to rebut Osborne's testimony. Further, there is no evidence to suggest that such "testing" or "experiment" in front of a newspaperman who was the agricultural editor for the largest circulation daily in North Carolina was necessary, or the "real purpose" of the public use. The evidence clearly shows that William Pickett, as co-inventor, considered the Harvester to be marketable and was in fact making great efforts to commercialize the new tobacco harvester by going to the most widely published newspaper in the Carolinas.

The very purpose of the § 102(b) "public use rule" is to stimulate a reasonable disclosure of new inventions within the framework of the patent laws. The provision is "Aimed at preventing an inventor from holding back the secrets of his invention while concurrently exploiting it, and thereafter exchanging his knowledge for a legal monopoly when confronted with the possibility of competition." *Atlas v. Eastern Airlines, Inc.*, 311 F.2d 156, 159 (1st Cir.1962). Pickett's public use of the tobacco harvester in order to gain commercial recognition so as to market the new machinery is exactly the type of activity § 102(b) was aimed at stopping.

Harrington contends that the machine demonstrated by William Pickett in September, 1966 was only a second prototype which was changed and refined to the extent that any showing of the second prototype could not affect the ultimate patent. Powell counters this argument by contending that claim 8 of the Pickett patent is written in such broad language that there is nothing in the third prototype that was not included in the second prototype. Claim 8 reads as follows:

8. A machine for stripping tobacco leaves off the stalks of rows of tobacco plants standing in a field comprising:

(a) a mobile frame adapted to travel along a row of tobacco plants,

(b) defoliator means carried by said frame for stripping leaves from tobacco stalks as said frame moves along a row,

(c) guide means associated with said frame for guiding successive tobacco stalks between said defoliator members,

(d) conveyor means carried by said frame for receiving and carrying away loose leaves thus stripped off the defoliator means,

(e) said defoliator means and guide means having at least their front ends suspended from an upper portion of said mobile frame so that at least the front portions of said defoliator means and guide means will have a considerable degree of freedom to swing laterally with respect to the longitudinal axis of said machine.

Harrington submits the deposition of Joseph Harrington as evidence that changes were made in the harvester shown to Osborne, Wilson, Splinter and Suggs. Careful review of this deposition reveals that the changes do not affect claim 8. For example, Mr. Harrington states that the third prototype was a three-wheel driven machine with a driver's seat in a lower position, while the second prototype was a four-wheel machine with the driver's seat located on a higher level. Mr. Harrington also testified that the conveyor belts used to move the tobacco leaves from the defoliation head to boxes at the rear of the machine were replaced by steel rollers.

Harrington, therefore, denies that the harvester demonstrated by Pickett in September, 1966 was in its final form. Such changes, however, are not critical because Claim 8 is so broadly written that it describes both the second prototype demonstrated in September, 1966 and the third prototype developed in January, 1967. Such changes in no way affect the functions of claim 8. It is well-settled law that the experimental use exception does not apply to experiments performed with respect to non-claimed features of an invention. *In re Smith*, 714 F.2d 1127, 1136 (Fed.Cir.1983). The only change alluded to by Mr. Harrington that affects the defoliation process is the addition of the so-called "stalk gripping belts, 150 and 152." Mr. Harrington's recollection of this particular addition, however, appears to be clouded. When asked whether this feature was included on any prototype after the second, he replied that he could not recall. Moreover, the court finds that the addition of the stalk-gripping belts to be no more than a refinement of claim 8. The applicable rule in such instances is "that an invention is deemed functional for public use purposes when it can perform the general function for which it has been developed, even though the device might be later refined. *Atlas v. Eastern Airlines, Inc.*, 311 F.2d 156, 162 (1st Cir.1962); *Application of Theis*, 610 F.2d 786, 792 (C.C.P.A.1979).

Harrington further argues that there are material questions of fact in dispute that bar summary judgment. This argument is also without merit. The precise issue to be settled in this matter is whether there was a public use of the invention of claim 8 of the Pickett patent. Powell has shown that with regard to the public demonstrations of the tobacco harvester in September, 1966, which included all of the basic elements of claim 8, there are no material facts in dispute. Harrington submits no evidence which tends to show that an experiment or test of claim 8 of the Pickett patent was necessary and not merely incidental to and subsidiary to a public and commercial use in September, 1966. Harrington's mere conclusory statements that Pickett's demonstrations were experimental is insuffi-

cient to raise a genuine issue of material fact so as to forestall summary judgment. *See Atlas v. Eastern Airlines, Inc.,* 311 F.2d 156 (1st Cir.1982); *Barmaq Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831 (Fed.Cir.1981).

Based upon the totality of the circumstances the court finds that William Pickett's demonstrations in September, 1966, of a mechanized tobacco harvester incorporating claim 8 of the Pickett patent was a public use within the meaning of 35 U.S.C. § 102(b). The court further finds that Harrington has failed to meet its burden of coming forward with clear and convincing evidence that the public use activity was experimental in nature and therefore exempt from § 102(b). Further, Harrington has presented no evidence to rebut the showing by Powell that claim 8 of the Pickett patent was in public use before the critical date of October 2, 1966.

The court, therefore, finds that claim 8 of the Pickett patent is invalid as a matter of law and defendant's motion for partial summary judgment is hereby ALLOWED.