**CATAPHOTE CORPORATION, a corporation, Appellant,**

v.

**DE SOTO CHEMICAL COATINGS, INC., a corporation, Appellee.**

**No. 19827.**

United States Court of Appeals
Ninth Circuit.

Feb. 8, 1966.

Charles J. Merriam, William A. Marshall, Alvin D. Shulman, Merriam, Marshall, Shapiro & Klose, Chicago, Ill., Allan R. Moltzen, Lerer, Moltzen & McAteer, San Francisco, Cal., for appellant.

Dugald S. McDougall, Chicago, Ill., Carl Hoppe, San Francisco, Cal., for appellee.

Before BARNES, HAMLIN and ELY, Circuit Judges.

BARNES, Circuit Judge:

This appeal arises from a district court judgment adverse to plaintiff-appellant, Cataphote Corporation, in a patent infringement suit instituted against defendant-appellee, De Soto Chemical Coatings, Incorporated.[1]

The district court had jurisdiction pursuant to 28 U.S.C. § 1338. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

The district court held appellant's patent claim invalid on the basis of the limitations imposed by 35 U.S.C. § 102(b). This section provides:

"A person shall be entitled to a patent unless—

\*    \*    \*    \*    \*    \*

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States   \*   \*   \*."

The district court concluded that appellant's patent ownership was invalid because "the invention" of that patent was "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." The sole issue on this appeal is whether or not the district court erred in concluding that appellant's patent application was untimely.

The patent involved in this infringement proceeding purports to cover a thermoplastic pavement-marking composition, used principally for traffic lane markings on public thoroughfares. In September 1955, Cataphote had hired Arthur D. Little, Inc., to engage in research to develop a marking substance which might prove more durable than the paint which was customarily used for this purpose. John A. Poole, a Little employee, and the nominal patentee, developed the substance for which Cataphote was eventually granted a patent. It is the timeliness of the application for that patent that concerns us in this present controversy. Appellee's defense, sustained by the district court, contended that appellant's patent application of November 12, 1957 had been filed more than one year after the subject matter had been in public use and on sale in the United States, and, therefore, the patent was clearly void under the express terms of 35 U.S.C. § 102(b). The express purpose of this statutory provision was to prevent the extension of the monopoly period permitted by the patent laws by requiring an inventor to make timely application so that the patent period might commence to run without undue delay. The district court concluded that appellant's patent, if sustained, would result in a circumvention of both the terms and policy of section 102(b).

The disputed factual issue contested at trial and raised again on this appeal concerns whether or not the patent application of November 12, 1957 was filed more than one year after the product was placed in public use or on sale in this country; i. e., the factual issue before the district court was whether the thermoplastic was in public use or on sale prior to the critical date of November 12, 1956. The district court concluded that it was, rejecting appellant's contention

---

1. The determinative issue was raised in defendant's motion for a separate trial on that issue.

that its activities with respect to the thermoplastic prior to the crucial date were merely *experimental*.

■■ The determination of whether appellant's activities prior to the critical date were merely experimental or were of the kind set out in section 102(b) is a matter left for the consideration of the trier of fact. The resolution of this question depends principally upon a careful examination of each item of evidence and an evaluation thereof to judge the nature and purpose of the course of conduct of the purported patent holder. We cannot accept appellant's characterization of this problem as one involving a matter of law, and, therefore, one free of the limitations imposed on an appellate court when reviewing the factual determinations of the court below. The resolution of the sole issue raised regarding section 102(b) depends entirely on a determination, from the totality of evidence presented by both parties, of the nature of the acts committed prior to the critical date and the purpose that motivated the commission of those acts. To the extent that issues can be accurately characterized as solely questions of law or fact, the crucial issue involved in this controversy is an issue of fact.

■ Appellant, though reluctant to characterize the issue involved as one of fact, does nevertheless ground its argument on a purported demonstration of the "clearly erroneous" nature of the district court's findings. In so doing, however, appellant disregards the severe limitations imposed on an appellate court in reviewing findings of fact. It is not our function to reevaluate the evidence presented below. We cannot substitute our judgment for the first-hand evaluation made by the trier of fact. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure our obligation is to determine if the findings below were "clearly erroneous." This statutorily imposed standard does not vest us with power to reweigh the evidence presented at trial in an attempt to assess which items should and which should not have been accorded credibility. Our task, rather, is to determine if there exists evidence of substance to support the findings of fact of the trial court. Thus, it does not aid appellant's position on review to merely extract that evidence presented which supports its position; rather it must additionally demonstrate that no substantial evidence was presented which supports the district court findings in favor of appellee.

■ We have examined the entire record of this proceeding as well as the briefs of both parties. We cannot say that no substantial evidence exists to support the factual findings of the district court.[2] Nor are we of "the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The facts, as fully set forth in the district court's findings,[3] reveal that appellant had instituted a period of market testing, well beyond the product experimental stage, substantially in advance of the critical date. As one example, Cataphote's president, in a letter of February 6, 1956, unambiguously instructed the developing company, Arthur D. Little, Inc., to discontinue its chemical research as of February 15, 1956, and devote its

2. Early in 1956, tests were made outside the Cataphote plant in Florwood, Mississippi. In May and June 1956, Cataphote sold the proposed thermoplastic composition to the cities of Grand Rapids, Lansing and Jackson, Michigan, and negotiated with public agencies in Atlanta, Georgia Dallas, Texas and Toledo, Ohio. Sales in Toledo, Ohio, and Chicago, Illinois developed in August and November 1956. Regular invoices were rendered when sales occurred, and commissions paid on these sales to Cataphote's salesman Reed.

The trial court was undoubtedly influenced in his conclusion these were not experimental installations, because of the paucity of testimony that anyone on behalf of Cataphote had at any time inspected the results of pavement use.

3. Finding of Fact 6 (C.T. p. 30), adopting as subsidiary findings those set forth in its memorandum of decision filed October 8, 1964 (C.T. pp. 17–28).

efforts instead to the development of an applicating machine.[4] The evidence also discloses that in the spring and summer of 1956 Cataphote began negotiations with public agencies in many parts of the country for sales of the newly-developed thermoplastic process. The sales that eventually evolved from these negotiations, in August and September 1956, were concededly of a limited volume and at a reduced price. But these factors are not conclusive evidence that the product was still being treated experimentally as that term is used in patent law. Rather these factors are consistent with a program of market testing, product introduction, and sales promotion that is consistent with a stage of product development well beyond the experimental. The principal purpose of these sales to public agencies was commercialization of the product, not further experimentation and testing of the ultimately patented product. At this stage of commencement of negotiations, the product was sufficiently developed that its commercial promotion could have been the primary motivation behind appellant's course of conduct.

■ The district court findings recite a number of additional indicia of the commercialization of the thermoplastic which substantiate the basic finding of the court and which we do not consider it necessary to here repeat. They also are consistent with the finding that the entire course of appellant's conduct after February 1956 was to promote product *sales,* and any testing that occurred had as its primary objective an ascertainment of the product's marketability. This activity, as noted by the district court here (as well as the court in Smith & Davis

Mfg. Co. v. Mellon, 58 F. 705 (8th Cir. 1893)), is typical of "a trader's, and not an inventor's, experiment," and "such a use does not carve an exception out of the statute." We conclude that the district court properly found that appellant's patent, arising from its application filed November 12, 1957, was invalid.[5]

■ An additional charge of error is raised by appellant's challenge of the district court's finding that a highway-marking product covered by another patent number was also rendered invalid by the acts prior to the critical date. The patent application of November 12, 1957 concerned a thermoplastic composition which used a styrene resin. That application was abandoned in 1960 and was supplanted by a continuation-in-part application which included different resin ingredients (principally alkyd resin). Appellant urges that the finding of public use and sale in excess of one year prior to patent application should not have been applied to this new patentable alkyd resin product.

We conclude this argument is untenable. The alkyd resin patent claim is clearly barred by the same public use and sale which barred the styrene resin claim. The variation represented by the change in resin composition was not demonstrated to have entailed a patentable novelty. The variation involved was but a minor variation of the product, and added nothing which was patentable. The prior public use or sale which invalidated the patent application of November 12, 1957 similarly invalidated the continuation-in-part application.

The judgment of the district court is affirmed.

4. Appellant urges that this letter was countermanded by oral instructions from Cataphote's president, but doubtless the fact that Little records show "virtually no work" on the chemical development for the year 1956 after February 15, 1956 influenced the judgment of the trier of the facts.

5. Appellant also urges that this was not a proper case for determination by separate trial of one issue; that the issue of experimental use *vis-a-vis* commercial use is related to the issue of invention—*i. e.,* patentability. But it is also material on the issue of prior use. In ordering a separate trial, the district court did not abuse the discretion conferred by Rule 42(b), Federal Rules of Civil Procedure.