**SUPER MOLD CORPORATION,**
Appellant,

v.

**CLAPP'S EQUIPMENT DIVISION, INC.,**
Appellee.

**CLAPP'S EQUIPMENT DIVISION, INC.,**
Appellant,

v.

**SUPER MOLD CORPORATION,**
Appellee.

Nos. 21752, 21752A.

United States Court of Appeals
Ninth Circuit.

July 11, 1968.

Rehearing Denied Sept. 11, 1968.

Francis A. Utecht (argued), of Fulwider, Patton, Reiber, Lee & Utecht, Long Beach, Cal., for appellant.

Andrew J. Belansky (argued), John F. Powell of Christie, Parker & Hale, Pasadena, Cal., for appellee.

Before HAMLEY, KOELSCH, and ELY, Circuit Judges.

ELY, Circuit Judge:

Appellant Super Mold Corporation filed a complaint in the District Court alleging infringement by appellee Clapp's Equipment Division of a patent owned by Super Mold. Clapp's moved for a separate trial on the issue of whether the patented device had been placed in public use or put on sale in this country more than one year prior to the date of the application for the patent, so that the patent would be invalid under 35 U.S.C. § 102(b).[1] Clapp's then filed a motion for summary judgment and moved for the award of attorneys' fees under 35 U.S.C. § 285.[2] Following a hearing on the motions, the District Court rendered summary judgment in Clapp's favor but denied its motion for attorneys' fees. Super Mold prosecutes this appeal from the summary judgment, and Clapp's appeals from the denial of attorneys' fees. We affirm the judgment of the District Court on both issues.

We have recently had occasion to discuss the nature and application of 35 U.S.C. § 102(b). In Cataphote Corp. v. De Soto Chemical Coatings, Inc., 356 F. 2d 24, 25 (9th Cir.), cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966), we stated:

"The express purpose of this statutory provision was to prevent the extension of the monopoly period permitted by the patent laws by requiring an inventor to make timely application so that

the patent period might commence to run without undue delay."

The statute thus permits the inventor to retain the secrecy of his discovery so long as he does not commercially exploit its use for more than one year prior to his patent application. See Elizabeth v. Pavement Co., 97 U.S. 126, 24 L.Ed. 1000 (1877). As observed in Koehring Co. v. National Automatic Tool Co., 362 F.2d 100, 103–104 (7th Cir. 1966):

"A reasonable period of experimentation wherein the inventor may perfect what he has conceived has long been acknowledged as an exception to the requirement of seasonable disclosure. But this exception must be recognized as such; it must be so limited as not to interfere with the effectuation of the policy underlying the general rule of early disclosure. An inventor may not be permitted to use a period of experimentation as a competitive tool. '[T]he use [of an invention] ceases to be experimental when the motivation of the inventor is to exploit the invention and gain a competitive advantage over others.' Solo Cup Co. v. Paper Mach. Corp., 240 F.Supp. 126, 131 (E. D.Wis.1965)."

In the present case, we hold that the District Court properly concluded that the inventor's motivation during the claimed period of experimentation was "to exploit the invention and gain a competitive advantage over others." We also agree with the District Court's determination that there existed no genuine issue of material fact relative to that conclusion.

On October 29, 1959, Louis T. Fike filed in the United States Patent Office a patent application covering the tire retreading apparatus which is the subject of this suit. Fike then assigned the patent application to Super Mold, which at that time was known as Trutred Tire Molds, Inc. Super Mold was engaged in

---

1. As to conditions for patentability, 35 U.S.C. § 102 provides: "A person shall be entitled to a patent unless— * * * (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on

sale in this country, more than one year prior to the date of the application for patent in the United States * * *."

2. 35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

the business of manufacturing tire retreading equipment. In early 1958, the tire retreading industry was vexed with the problem of eliminating crooked treads in the production of recapped tires. In February 1958, Sears, Roebuck & Company, which was a customer of Super Mold using approximately 250 tire retread molds throughout the country, requested Fike, who was then general manager and vice-president of Super Mold, to eliminate this problem within the Sears' system. Later in February 1958, after Fike had been unable to develop a satisfactory solution to the problem, Sears solicited bids from other companies, including Clapp's, for the production of a suitable machine.

During the taking of his deposition, Fike was questioned as to whether he was concerned that if he did not provide Sears with a solution to the tread-aligning problem, Sears would purchase acceptable machines elsewhere. He replied, "Yes, sir. We were very much concerned about Sears buying anything except from us." In April 1958, Fike developed two prototypes of a retreading aligner, the identical apparatus for which the patent subsequently issued. Upon Sears' request that these prototypes be installed in its retreading plant in Los Angeles, Fike delivered them to the plant, and they became operative in May 1958. On June 16, 1958, Sears issued a purchase order for 248 of Fike's tread aligners. Two days later, on June 18th, Fike acknowledged the Sears order and requested that Sears inform him of the inventory requirements of the plants so that Super Mold could proceed to fill the order. As to this, Fike testified:

"Q. Why did you accept this purchase order to deliver 248 tread aligners to Sears as of June, 1958? Was it because you were going to be paid for it?

"A. Well, certainly.

"Q. It was a commercial transaction, was it not?

"A. I guess all our actions with Sears could be commercial transactions, I suppose."

Beginning on July 30, 1958, Super Mold shipped various numbers of tread aligners to Sears' plants in Ohio, New Jersey, Illinois, Texas, California, and Washington. Of the 248 aligners ordered by Sears, 242 were shipped prior to October 29, 1958, the crucial date here. Prior to that same date, Sears paid Super Mold $40,176, or $162 per unit, in full satisfaction of the price of the 248 aligners. In the numerous letters exchanged between Fike and the Sears representative who negotiated the contract between Sears and Super Mold, there is no mention or suggestion of an experimental program in connection with the tread aligners. The apparatus sold to Sears before October 29, 1958, and subsequently patented are one and the same.[3]

In the September 1958 and October 1958 issues of the trade publication, *Tire, Battery and Accessory News*, Super Mold advertised the subsequently patented apparatus, and in the October issue offered an *"Unconditional One-Year-Guarantee* against defective material and workmanship." At the 38th Annual Convention of the National Tire Dealers and Retreaders, held in Los Angeles on October 11–15, 1958, Super Mold displayed two of the tread aligners and demonstrated their moving parts. The price of the aligner was quoted to visitors to the display booth, and one aligner was offered as a door prize.

Super Mold admits the facts as recited above, but it claims, notwithstanding, that Fike's testimony in his deposition that "[t]he sale and use of my tread aligners to Sears was a good faith use for experimental purposes and not a public use" created a genuine issue of a material fact. We cannot agree. In Cataphote Corp. v. De Soto Chemical

---

3. As discussed in the opinion infra, Fike made certain modifications in some elements of the apparatus during this period of time, but none of these modifications were described or claimed in the patent application.

Coatings, Inc., 356 F.2d 24, 26 (9th Cir.), cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966), we said:

> "The determination of whether * * * [the inventor's] activities prior to the critical date were merely experimental or were of the kind set out in section 102(b) * * * depends principally upon a careful examination of each item of evidence and an evaluation thereof to judge the nature and purpose of the course of conduct of the purported patent holder."

We have carefully reviewed the affidavits and conclude, as did the District Court, that no genuine issue of fact was presented. The record as a whole compels determination that the purpose of Fike's course of conduct was commercial exploitation of his tread aligner. In devoting its entire production facilities to the manufacturing of 248 tread aligners for prompt shipment to Sears' plants throughout the country, Super Mold obviously sought to gain a competitive advantage over the companies from which Sears had solicited bids. Fike's testimony concerning his subjective intent has no probative force when weighed against the overwhelming objective evidence to the contrary.

After the machines were installed in Sears' plants, some modifications occurred. They affected the size and material used in the construction of some of the elements of the apparatus. Super Mold argues that since the machine was modified, it follows that its use, prior to the modifications, was purely experimental. We find no merit in this argument. None of the modifications were of such significance as to prompt Fike to describe or claim them in his patent application. Unless such improvements would themselves be patentable, they do not necessarily suffice to bring within the experimental exception an invention which has otherwise traversed the statutory bounds of the exception. Tool Research & Eng'r Corp. v. Honcor Corp., 367 F.2d 449, 454 (9th Cir. 1966), cert. denied, 387 U.S. 919, 87 S.Ct. 2032, 18 L.Ed.2d 972 (1967). While Fike was surely concerned with the quality of his invention's performance, the same is doubtless true as to the conscientious inventor in every such case. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141 (1887).

We reject Clapp's contention that the District Court erred in refusing its request for an award of attorneys' fees under 35 U.S.C. § 285. It rested within the sound discretion of that court to determine whether Super Mold had in fact instituted and prosecuted its suit in bad faith, Park-In-Theatres v. Perkins, 190 F.2d 137 (9th Cir. 1951), and we find no sufficient reason for disturbing the District Court's conclusion. Proof of a patent's invalidity does not necessarily establish bad faith on the part of the patentee who has charged infringement of his patent. Florida Brace Corp. v. Bartels, 332 F.2d 337 (9th Cir. 1964).

Affirmed.