Thomas E. PICKERING, Plaintiff-Appellant,

v.

Orval HOLMAN et al., Defendants-Appellants.

Thomas E. PICKERING, Plaintiff-Appellee,

v.

Orval HOLMAN et al., Defendants-Appellants.

Nos. 25708, 25677.

United States Court of Appeals, Ninth Circuit.

April 18, 1972.

C. Russell Hale (argued), E. Roderick Cline, of Christie, Parker & Hale, Pasadena, Cal., for appellant-cross-appellee.

Charles E. Wills (argued), of Nilsson, Robbins, Wills, & Berliner, Los Angeles, Cal., for appellee-cross-appellant.

Before CARTER, and HUFSTEDLER, Circuit Judges, and BATTIN, District Judge.*

JAMES M. CARTER, Circuit Judge:

Plaintiff Pickering appeals from the district court's holding that his patent was invalid in that it was described in a printed publication more than one year prior to the filing of the application for the patent. He also appeals from the court's award of taxable costs to defendants. Defendants Holman, Huey and Fenton (hereafter defendants) cross-appeal on the basis of the court's refusal to award them attorney's fees.[1] Pickering's appeal raises two issues: (1) Whether publication pursuant to experimental activity is exempt from the 35 U.S.C. § 102(b) bar against publication more than one year prior to application for patent protection; (2) Whether costs may be awarded where they were paid for by one not a party to the litigation. The cross-appeal raises the issue as to whether the court abused its discretion in refusing to grant attorney's fees to defendants.

## I. PATENT VALIDITY

■ Thomas Pickering is a co-inventor and owner of patent 3,266,015 directed to a plastic blinker light, which is useful as a traffic warning device. Pickering filed his application with the Patent Office on March 19, 1962. De-

fendants were sued on the basis of their trading in warning lights covered by the Pickering patent.

In the suit below, defendants challenged the validity of the Pickering patent under 35 U.S.C. § 102(b),[2] arguing that the patent was "described in a printed publication" and in "public use" and "on sale" more than one year prior to the date of application for a patent. A separate trial under Rule 42(b) F.R. Civ.P. was held on this issue and the jury was required to return special verdicts under Rule 49(a) F.R.C.P. The jury, by way of answer to written interrogatories, found that the claimed invention was described in detail in a printed publication and in public use and on sale prior to March 19, 1961, i. e., more than one year prior to the filing of the application for a U.S. patent. The jury also determined that the "main purpose of the patentee's activities prior to March 19, 1961 [was] for experimentation and testing" and that "one of the purposes of the patentee's activities prior to March 19, 1961 [was] for trade and profit."

The court, pursuant to these verdicts, concluded that the patent was invalid under the publication bar of 35 U.S.C. § 102(b), and that this bar was not avoided by the so-called "experimental use exception." While the court's order does not explicitly so provide, it appears that the court was of the opinion that the public use and sales were excused as experimental.

■ Pickering claims error, arguing that the experimentation doctrine should be applied to the prohibition against "printed publications" in exactly

* Honorable James F. Battin, United States District Judge, District of Montana, sitting by designation.

1. Their cross-appeal also attacks the district court's holding that the patent was not invalidated by prior public use or sale. In view of our decision to affirm, we need not consider this part of their cross-appeal.

2. A person shall be entitled to a patent unless—

　(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States . . . ." 35 U.S.C. § 102(b) (1970).

the same manner and to exactly the same extent as it is applied to the "on sale" and "in public use" prohibitions.[3] We do not agree. Their argument confuses the policies which underlie these statutory prohibitions and misunderstands the reason for the experimental use doctrine. As we explain below, that doctrine is a logical application of the public use prohibition and not an exception to it. The doctrine is inapplicable to publications.

### The Public Use Bar

■ 35 U.S.C. § 102(b) provides that an inventor shall not be entitled to a patent if "the invention was . . . in public use or on sale in this country, more than one year prior to the date of application for patent in the United States." The policy underlying this provision is clear. It prevents an inventor from extending the period of his monopoly by exploiting his invention before his application for a patent. Pennock v. Dialogue, 27 U.S. (2 Pet.) 1, 19, 7 L.Ed. 327 (1829); Super Mold Corp. v. Clapp's Equip. Div., Inc. (9 Cir. 1968), 397 F.2d 932, 933; Tool Research & Eng'r Corp. v. Honcor Corp. (9 Cir. 1966), 367 F.2d 449, 454; Koehring Co. v. National Automatic Tool Co. (7 Cir. 1966), 362 F.2d 100, 103; Metallizing Eng'r Co. v. Kenyon Bearing & Auto Parts (2 Cir. 1946), 153 F.2d 516, 520, cert. den., 328 U.S. 840, 66 S.Ct. 1016, 90 L.Ed. 1615; Aerovox Corp. v. Polymet Mfg. Corp. (2 Cir. 1933), 67 F.2d 860, 862; Ushakoff v. United States (Ct.Cl.1964), 327 F.2d 669, 672, 164 Ct. Cl. 455; Note, The Public Use Bar to Patentability: Two New Approaches to

the Exception, 52 Minn.L.Rev. 851, 864–865 (1968).

■ A use which commercially exploits an invention constitutes a public use (i. e. either "in public use or on sale"). The use may be exposed to the public or hidden. Hall v. Macneale, 107 U.S. 90, 97, 2 S.Ct. 73, 27 L.Ed. 367 (1882). Commercial exploitation of the product of a secret process or machine constitutes public use, regardless of whether the process or machine could have been known by familiarity with the product. Tool Research Eng'r Corp. v. Honcor Corp. (9 Cir. 1966), 367 F.2d 449, 454; United States Chem. Corp. v. Plastic Glass Corp. (3 Cir. 1957), 243 F.2d 892, 894; Huszar v. Cincinnati Chem. Works (6 Cir. 1949), 172 F.2d 6, 10; Metallizing Eng'r Co. v. Kenyon Bearing & Auto Parts Co. (2 Cir. 1946), 153 F.2d 516, 520, cert. den. 328 U.S. 840, 66 S.Ct. 1016, 90 L.Ed. 1615.

■■ A use which is primarily experimental and no more than incidentally for trade or profit is not a public use. E. g. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 88 S.Ct. 122, 31 L.Ed. 141 (1887). This is the so-called "experimental use exception". Viewed in light of the policy underlying the public use provision, however, it is no exception at all. A bona fide experimental use involves no commercial exploitation. "The use [of an invention] ceases to be experimental when the motivation of the inventor is to exploit the invention and gain a competitive advantage over others." Solo Cup Co. v. Paper Mach. Corp., D.C., 240 F.Supp. 126, 131, quoted in Super Mold Corp. v. Clapp's Equip. Div., Inc. (9 Cir. 1968), 397 F.2d 932, 933.

---

**3.** We note that, under the jury's verdicts, it is not clear whether the experimental use doctrine should apply in either case. That doctrine permits an inventor to avoid the public use or sale provision by showing that his use of the invention was primarily experimental and only *incidentally* for trade or profit. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 256, 8 S.Ct. 122, 31 L.Ed. 141

(1887). The jury's finding that "one purpose of the patentee's activities [was] for trade and profit" is ambiguous. They did not determine whether this purpose was merely incidental to experimentation. For purposes of this appeal, however, we assume that the patentee's profits were merly incidental to experimentation.

## The Publication Bar

■ The 102(b) bar against "publication in this or a foreign country . . . more than one year prior to the date of application for patent in the United States" serves other policies. Anything that is printed and made accessible to any part of the public is a printed publication. 1 Deller's Walker on Patents § 60 at 273 (2 ed.). Confidential documents are not publications. *Id.* The key is disclosure by way of a medium capable of providing wide public access, In re Tenney (1958), 254 F.2d 619, 626, 45 CCPA 894, not commercial exploitation.

■ ■ Publication without seasonable application for patent protection thus operates as a constructive abandonment. The policy here goes to the nature of the patent grant. A patent is in the nature of a contract between the public and the inventor. A patentee "gives something of value to the community by adding to the sum of human knowledge. . . . In consideration of its disclosure and the consequent benefit to the community, the patent is granted." United States v. Dubilier Condenser Corp., 289 U.S. 178, 186, 53 S.Ct. 554, 557, 77 L.Ed. 1114 (1933). The publication bar goes upon the theory that the idea is already in the public domain and there can be no consideration offered in exchange for the grant of the monopoly. In re Ekenstam (1958), 256 F.2d 321, 323, 45 CCPA 1022; In re Tenney (1958), 254 F.2d 619, 624, 45 CCPA 894; Cottier v. Stimson (C.C.D.Or.1884), 20 F. 906, 910. The one-year grace period is the only recognized exception to this policy.

The publication bar also protects the reasonable expectations of the public. An inventor is not expected to disclose his invention without seeking a patent within a reasonable time thereafter. The publication bar prevents patent rights from springing up which might prejudice those who practice the invention, reasonably assuming it was not or could not be the subject of a monopoly.

The experimental use doctrine is out of place here. Any publication, regardless of the purposes behind it, violates the policies behind the publication bar. Publication pursuant to experiment is no exception. Experiment does not insulate against or limit the scope of public disclosure, for similar to "public use", experimentation may or may not be public. Experimental use merely negatives the commercial exploitation necessary for public use. Such exploitation is irrelevant to whether a printing has been made accessible to a part of the public.

In re Hassler (1965), 347 F.2d 911, 52 CCPA 1546, lends support to our position. There the court held a newspaper article to be "prior art" under 35 U.S.C. § 103, where the article did no more than report the progress of experiments by appellant and his co-workers. *Id.* 347 F.2d at 913. The court rejected the notion that the hospitality accorded to experimental inventions should except such publication. As Judge Smith stated in his concurring opinion, "Congress has seen fit to fix the time period for such 'hospitality' at one year from the date of publication describing the invention and we can do nothing about it." *Id.* at 919–920. *See* Browning Mfg. Co. v. Bros., Inc. (D.Minn.1962), 134 USPQ 231, 235, aff'd on other grounds, (8 Cir.) 317 F.2d 413. We agree. We hold that publication pursuant to experiment is not exempt from the statutory bar against printed publication.

## II. GRANT OF COSTS TO DEFENDANTS

■ Pickering finds error in that a third party—the manufacturer of the infringing device—was footing defendants' litigation and thus their costs were paid for by that party. For this reason, he argues, he should not be required to pay defendants' costs.

Tidewater Patent Dev. Co., Inc. v. Kitchen (4 Cir. 1970), 421 F.2d 680, is the closest case. There the court awarded attorney's fees to defendant even though a third party paid for the litiga-

tion expenses. We think the same principle should apply here. The arrangement between the defendants and the manufacturer is a common one in patent litigation. We see no reason to penalize it. Pickering, who obtained his patent without full disclosure to the Patent Office and sued upon an invalid patent, is the wrongdoer. If he is not charged costs he gains a windfall.

### III. DEFENDANTS' CLAIM FOR ATTORNEY'S FEES

Defendants, by way of cross-appeal, argue that they should have received attorney's fees. Under 35 U.S.C. § 285 such fees "may" be awarded only "in exceptional cases." The award "is a matter of discretion, and the court cannot be reversed except for abuse of discretion." Hayes Spray Gun Co. v. E. C. Brown Co. (9 Cir. 1961), 291 F.2d 319, 327. Our review of the record does not disclose an abuse of discretion.

The judgment is affirmed.