**LEAR SIEGLER, INC.,**
**Plaintiff,**

v.

**ARK–ELL SPRINGS, INC., and Robert F. O'Dell, Sr., Defendants.**

**No. EC 73–97–S.**

United States District Court,
N. D. Mississippi, E. D.

Oct. 2, 1975.

Fred M. Bush, Jr., Tupelo, Miss., Ernie L. Brooks, Southfield, Mich., for plaintiff.

Michael Malski, Amory, Miss., David B. King, Aberdeen, Miss., Hugh Carter, Birmingham, Ala., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was tried to a jury, June 23 through 27, 1975, at Aberdeen, Mississippi. The question of the prior use of the patent involved in the litigation was taken from the jury and submitted to the court on a stipulation of the parties.* Counsel were then afforded the opportunity of submitting memoranda of law on the question.

The court has considered the memoranda in light of the stipulation and the evidence introduced at the trial and is now in a position to determine the issue.

The here pertinent portion of 35 U.S.C. § 102(b) provides as follows:

> A person shall be entitled to a patent unless . . . the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent . . .

The record reflects without substantial dispute that the die here in issue which is shown in Surletta's United States Patent 3,071,168 was designed and drawn by him on or about September 30, 1957. His application for the patent was filed March 18, 1958. Surletta's attempts to design the die began more than one year prior to the filing of the patent application. Plaintiff concedes that springs were cut and formed on Surletta's early die designs. Plaintiff does not contest the assumption that the springs which were cut and formed, if saleable, were in fact sold by plaintiff along with other springs marketed by it. Plaintiff's position in this regard is reflected in the stipulation shown in the record, *supra,* to the effect that springs produced on one of the early dies were sold more than one year prior to the filing of the application for the patent.

It is the position of the defendants that the stipulated spring sale invalidates the patent under Section 102(b). Plaintiff, on the other hand, advances the argument that Surletta's early attempts to design the die of his patent were well within the law of experimental use and that the stipulated spring sale does not invalidate the patent.

It is well settled in the law that experimental use is an exception to the public use bar. 2 Deller's Walker on Patents § 145 (2d Ed.1964); *In re Yarn Processing Patent Validity Litigation,* 498 F.2d 271 (5th Cir. 1974); *City of Elizabeth v. American Nicholson Pavement Co.,* 97 U.S. 126, 24 L.Ed. 1000 (1878).

The United States Court of Appeals for the Fifth Circuit, speaking through Judge Thornberry, said in *In re Yarn Processing,* at page 277:

> The Court: All right, thank you, sir. Do you gentlemen agree to that stipulation?
> Mr. Brooks: Your Honor, we don't have any objection to the wording, so long as there is no implication from that, that that die was the die that stood up in production. But the facts speak for themselves in that connection. I assume Mr. Carter will agree to that.
> Mr. Carter: Now, we don't want any equivocation about this, since this has been taken away from the jury. My position simply is that what is covered by the patent was used. And I thought that is what we have been talking about all the time.
> The Court: I will take the stipulation as it is, and I will also consider the evidence as it was developed on the trial of the case."

---

* The stipulation is evidenced by the following excerpt from the record:

> "The Court: Can you gentlemen prepare a stipulation as to what the facts show?
> Mr. Carter: Judge, my understanding of the facts was—let me state what my understanding was, and if we can—
> The Court: Mr. Court Reporter, take this stipulation down and after we are through, will you transcribe this particular statement and also the statement of counsel so that I will have exactly the position of the parties as was shown by the record.
> Mr. Carter: It is hereby stipulated, by and between the parties, that sinuous wire springs, cut opposite-ended, were sold more than twelve months prior to the filing date of the patent in suit, and that those springs were produced on a die which incorporated the features of the Surletta Patent here in suit.

[U]nder certain circumstances a single instance of competitive exploitation of the invention by the inventor prior to the critical date can raise both the "on sale" and "in public use" bars to patentability.

Notwithstanding the existence of facts sufficient to raise either of these bars, a patent is valid if the public use or sale was primarily for the purpose of experimentation. The Supreme Court's statement of this rule in 1878 is still the law today.

The use of an invention by the inventor himself, or of any other person under his direction, by way of experiment, and in order to bring the invention to perfection has never been regarded as [a public] use. *City of Elizabeth v. American Nicholson Pavement Co.*, 1878, 97 U.S. 126, 134, 24 L.Ed. 1000, 1004. A bona fide experimental use does not place the invention in public use within the meaning of the statute even though the invention on experiment proves complete and requires no modification or change. . . . If the use of the invention is primarily for experimental purposes, the fact that profits are made will not raise any bar to patentability.

"A use by the inventor, for the purpose of testing the machine, in order by experiment to devise additional means for perfecting the success of. its operation, is admissible; and where, as incident to such use, the product of its operation is disposed of by sale, such profit from its use does not change its character; but where the use is mainly for the purposes of trade and profit, and the experiment is merely incidental to that, the principle, and not the incident, must give character to its use. The thing implied as excepted out of the prohibition of the statute is a use which may be properly characterized as substantially for the purposes of experiment.

*Smith & Griggs Manufacturing Co. v. Sprague*, 1887, 123 U.S. 249, 256, 8 S.Ct. 122, 126, 31 L.Ed. 141; *Pickering v. Holman*, 9 Cir. 1972, 459 F.2d 403. Whether a use is primarily for the purpose of experimentation is primarily a matter of the inventor's intent. "[T]he use ceases to be experimental when the motivation of the inventor is to exploit the invention and gain a competitive advantage over others." *Solo Cup Co. v. Paper Machinery Corp.*, E.D.Wis.1965, 240 F. Supp. 126, 131, modified on other grounds, 7 Cir. 1966, 359 F.2d 754.

In the action sub judice, if the prior use of the invention was for experimental purposes, the sale of the springs cut in the process of the experimentation does not render the patent invalid.

Whether the prior use of the invention was primarily for the purpose of experimentation is for the most part a matter of Surletta's intent. If, by using the invention prior to one year before the filing of the application, Surletta intended to exploit the invention and gain a competitive advantage over others, the prior use invalidates the patent. On the other hand, if Surletta's motive was to make use of the invention for experimental purposes only, the patent would not be invalidated. This is true, even though the springs cut in the process were sold by plaintiff along with other springs manufactured by it.

Upon the court's recollection of the testimony of Surletta and Witte offered at the trial on the point of Surletta's intent, and upon consideration of all the evidence pertinent to Surletta's intent introduced at the trial, the court has concluded that the use of the die which occurred more than one year prior to the date of application for the patent (March 18, 1958) was intended by Surletta and his associates to be for experimental purposes only. The sale of springs produced with the die was not pursuant to a plan to exploit the die or to use it to gain some competitive advantage, but was, on the contrary, mere-

ly a method of disposing of the springs produced in the process of experimenting with the die design which may have incidentally resulted in a minimization of plaintiff's experimental costs. In short, plaintiff's use of the die before one year prior to the date of patent application was experimental, not commercial.

Counsel for plaintiff may furnish the court with a judgment in accordance with the foregoing and the verdict of the jury within ten days.