**VETCO OFFSHORE INDUSTRIES, INC.,**
Plaintiff and Counterdefendant,

Vetco Offshore, Inc., Plaintiff in Intervention and Counterdefendant,

v.

**The RUCKER COMPANY, Defendant**
and Counterplaintiff.

No. C–75–0070–WWS.

United States District Court,
N. D. California.

April 10, 1978.

Philip Subkow, Bernard Kriegel, Subkow & Kriegel, Lewis Anten, Paul L. Gardner, Gardner & Anten, Beverly Hills, Cal., Dirks B. Foster, Ronald Laurie, Townsend & Townsend, San Francisco, Cal., for plaintiff and counterdefendant and plaintiff in intervention and counterdefendant.

Carl Hoppe, James F. Mitchell, Eckhoff, Hoppe, Slick, Mitchell & Anderson, San Francisco, Cal., for defendant and counter-plaintiff.

### MEMORANDUM AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

WILLIAM W SCHWARZER, District Judge.

This is an action by Vetco Offshore Industries ("Vetco") charging defendant The Rucker Company ("Rucker") with infringement of the United States Patents Nos. 3,714,995 and Re. (reissue patent) 28,281 covering a drill string motion compensator useful in offshore drilling. Vetco Offshore, Inc., Vetco's exclusive licensee of the patents in suit, filed a complaint in intervention. Rucker denied infringement in its answer and has asserted counterclaims seeking declaratory relief and damages for unfair competition and violation of the antitrust laws.

Rucker has now moved for partial summary judgment on two grounds: (1) that the invention claimed in the patents was described in printed publications more than one year prior to the application filing date of the patentees, thus rendering the patents void under 35 U.S.C. § 102(b), and (2) that the claimed subject matter of the patents was obvious at the time the invention was made to a person having ordinary skill in

the art, rendering the patents void under 35 U.S.C. § 103.

## I. *The Patents in Suit*

The claimed invention consists essentially of an apparatus placed within a floating derrick and having dual pistons which move within cylinders in such a manner as to prevent the vertical movement, or "heave", of a drilling platform at sea from being transmitted to the drill string running from the derrick to the drill bit on the ocean floor. This motion compensation is effected by automatic adjustment of fluid pressure within the cylinders, with the result that the drill bit is maintained in weighted operative position at the bottom of the hole regardless of the heave. The drill string is suspended by means of a large hook from a support which is attached to the bottom ends of the pistons. The cylinders in which the pistons move are attached to the travelling block suspended in the derrick.

The patent claims, among other things, the straddling arrangement of the two pistons on either side of the travelling block resulting in a close coupling of the travelling block and the hook. As a result less vertical space within the derrick is occupied by the motion compensating system and more is available for the drill string than where the piston is placed in series with the travelling block and hook. This allows room for larger sections of the drill string to be handled, for example in the course of "round tripping" to change or replace drill bits.

The patent also claims a means of mechanically locking the travelling block to the hook support, permitting full drilling operation without removal of the motion compensator.

The patent also claims a means of articulation between the piston rods and the hook support. This is accomplished by permitting the piston cylinders to pivot on hinges attached to the travelling block, permitting the motion compensator to adjust to a change in the vertical axis of the derrick in relation to the drill string brought about by the motion of the sea.

Finally, the patent claims a means of preventing damage to the compensator which might result from a rapid "bottoming-out" of the pistons within the cylinder in the event of a sudden reduction in the drill string load. This is accomplished by a "deceleration means", or shock absorber, which consists of orifices in each piston permitting slow transfer of hydraulic fluid in the cylinder from one side of the piston to the other.[1]

## II. *Anticipation*

The first issue presented by this motion arises under 35 U.S.C. § 102. That section provides in relevant part:

> "A person shall be entitled to a patent unless—
>
> \* \* \* \* \* \*
>
> "(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ."

■ Defendant contends that the motion compensator incorporating dual cylinders straddling the travelling block and a device to lock the travelling block and hook support were described in printed publications more than one year prior to the September 4, 1970, filing date of the application for the original patent 3,714,995, and that to that extent at least the patent is invalid.[2]

---

1. Claims 1–4, 10–13, 21–22, 25–28, 31–32, 35 and 38–42 of the patents define the straddling arrangement; claims 5–7, 14–17, 23–24, 29, 33 and 36 each define means for releasably locking the travelling block and the hook support together with the pistons retracted into the cylinders; claims 7–9, 18–20, 30, 34 and 37 each define means for deceleration of the movement of the pistons within the cylinders;

and claims 28, 40 and 42 define an articulated connection between the hook support and the travelling block.

2. The filing date for patent 3,714,995 was September 4, 1970; for Re. 28,218 December 18, 1973. For purposes of this motion, the reissue patent may be treated as a correction and modification of the original patent, subject to the same filing date.

Defendant relies on a series of disclosures of the claimed invention in what it contends were printed publications by Vetco itself, as well as by Rucker and Byron Jackson, Inc., beginning in 1966. The material facts concerning those publications are substantially beyond dispute; the conclusions to be drawn from them are not.

### Disclosures by Vetco

In March 1969, Edward Larralde and J. W. E. Hanes of Vetco completed drawing D–40265–A, sheet 2, showing a dual cylinder motion compensator straddling a travelling block. (Ex. Y, L–11) Blue line prints of the drawing were sent to Gulf Research, BIPM, an affiliate of Royal Dutch-Shell, and Asiatic Petroleum Corp., and shown to Humble Oil in an effort to sell the system during April, May and June 1969. (Exs. BB, CC, Y, L–11, L–37, L–76) During June and July 1969, two additional drawings of the dual cylinder design were prepared by Larralde along with a written description. (Exs. L–12, L–74, L–47) Blue line prints of these drawings were given to Esso Production Research Co. and to B. J. Livesay, a consultant for Esso, together with a copy of the description, and were shown to Western Offshore Drilling and Engineering Co. (Exs. Y, L–56).

### Disclosures by Rucker

In July and August 1966, at the request of sales personnel of Rucker, Douglas Nayler, an engineer employed by Rucker, along with other design engineers, prepared schematic and blue line drawings of dual cylinder motion compensator designs. (Perry Aff., Exs. G and H). These drawings clearly show the two cylinders straddling the travelling block. Design and operating calculations were also prepared. (Ex. 1) The drawings and calculations were submitted by Rucker to BIPM in August 1966.

In September 1966, Nayler prepared another blue line drawing of a dual cylinder compensator incorporating the straddling arrangement. (Clark Aff., Ex. M) Rucker provided a copy of that drawing to Humble Oil Company in connection with a sales proposal.

In August 1966, Rucker submitted a proposal to Defoe Shipbuilding Company for certain drilling systems including a motion compensator. (Ex. O) Early in 1967, in connection with negotiations concerning that proposal, Rucker presented to Defoe and the Scripps Institute of Oceanography a blue line print prepared by its subsidiary Hycalog, Inc., showing a dual cylinder motion compensator incorporating the straddling arrangement. (Ex. Q).

William Clark of Rucker also showed blue line prints of the drawings of dual cylinder compensators (Exs. H and M) to various prospective customers for drilling rigs, including Shell Oil Co., Humble Oil Co., Standard Oil Co. of California, Phillips Petroleum, Global Marine Co., Western Offshore Drilling and Exploration, ODECO and SEDCO.

### Disclosures by Byron Jackson, Inc.

In July 1966, Don Berry, a draftsman, on instructions from Garth Nicholson of Byron Jackson, Inc., prepared a drawing of a dual cylinder straddling motion compensator. (Exs. W, N1–282A) Blue line prints of that drawing were then shown by Nicholson or William Roberts to Shell Oil Co., Western Offshore Drilling and Engineering Co., Santa Fe Drilling Co., Standard Oil Co. of California, Southeastern Drilling Co., BIPM, British Petroleum Co., Phillips Petroleum Co., Burmah Oil Co., and copies were given to Global Marine Co. (Exs. W, X, N1–282A, 283A) The Jackson drawings showed not only the straddling arrangement but a means for releasably locking the block and hook support.

The foregoing facts are established by the deposition testimony, affidavits and exhibits submitted by defendant in support of its motion. Vetco has responded by way of conclusory denials and by taking issue with some evidentiary details. But Vetco's denials and objections raise no triable issue of fact with respect to the basic proposition which is indisputable, namely, that the claimed invention had been disclosed to numerous persons in the offshore drilling in-

dustry (both producers and contractors) prior to September 1969 in drawings, blue prints and written materials. Rucker is entitled to summary judgment if the disclosures qualify under Section 102(b).

Plaintiff contends that for several reasons they do not. Its principal contention is that the blue prints and drawings and the typed and reproduced descriptions do not constitute printed publications within the meaning of Section 102(b).

 That section is intended to implement the purpose of the patent laws to induce inventors to make available to the public inventions not previously known to it. In consideration for his disclosure, the inventor receives from the government a patent which is a seventeen year monopoly. If a patent makes claims to inventions previously in the public domain, the consideration for the monopoly fails. *See, United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 186, 53 S.Ct. 554, 77 L.Ed. 1114 (1933). Section 102(b) lays down as one test for the existence of prior public knowledge whether the invention was "described in a printed publication".

 The evolution of the term "printed publication" and its purpose were thoughtfully analyzed by Judge Tyler in *I.C.E. Corporation v. Armco Steel Corp.*, 250 F.Supp. 738 (S.D.N.Y.1966). As Judge Tyler made clear, the words "printed publication" have no talismanic significance. The purpose of the statute was not to assure that an earlier invention had been set in type before issuance of a patent is barred. Rather it can be read as establishing a convenient evidentiary standard for public dissemination sufficient to compel the conclusion that an invention is in the public domain. Thus, the court there concluded that Section 102 " . . . can include a document printed, reproduced or duplicated by modern day methods, including microfilming, upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." (250 F.Supp. at 743)

*See, also, Philips Elec. & P. Indus. Corp. v. Thermal & Elec. Indus.*, 450 F.2d 1164, 1170 (3rd Cir. 1971).

Although plaintiff disputes some of the details concerning the material facts, it is beyond dispute that from 1966 until 1969, Vetco, Rucker and Jackson produced and disseminated drawings and descriptions of motion compensators incorporating the basic claim of the invention in issue, *i. e.*, the space-saving straddling arrangement. These documents were made available—either by physical delivery or at least by display—to some sixteen companies and thirty individuals involved, directly or indirectly, in offshore drilling. While the record does not disclose how many companies other than those specifically identified in the motion papers were interested in offshore drilling, it appears to be beyond question that the identified companies represented the major part of the public interested in the particular art involved.

This case therefore does not raise the problem of whether the making and filing of only one or a few copies, reproduced by novel means such as microfilm, comes within Section 102(b). Compare *Philips Elec.* and *I.C.E. Corp.*, above. Here there is no question that the information shown on the drawings and blue prints and in the written descriptions was in fact widely disseminated, without apparent restriction on the use of the information, to commercial companies and their representatives who were most likely to be interested in it. Although the number of recipients of the information was not large in absolute terms, it represented the major part of the class of persons concerned with the particular art and thus most likely to avail themselves of the information. *See, Garrett Corp. v. United States*, 422 F.2d 874, 878, 190 Ct.Cl. 858 (1970); *Pickering v. Holman*, 459 F.2d 403, 407 (9th Cir. 1972), and *Jockmus v. Leviton*, 28 F.2d 812, 813 (2nd Cir. 1928), where Judge Learned Hand said:

" . . . While it is true that the phrase, 'printed publication', presupposes enough currency to make the work part of the possessions of the art, it demands no more. A single copy in a library, though more permanent, is far less fitted to inform the craft than a catalogue freely circulated, however ephemeral its existence; for the catalogue goes direct to those whose interests make them likely to observe and remember whatever it may contain that is new and useful."

█ The blue prints and drawings in question, along with the typewritten description in some instances, made available to the public interested in drill string motion compensators the geometry of the straddling arrangement which is claimed as the invention. They were sufficient to enable a person skilled in the subject matter to recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation. It is clear that they at least "pointed the way [a user of the invention] must travel." *Hamilton Laboratories v. Massengill*, 111 F.2d 584, 587 (6th Cir. 1940). They described the invention with sufficient particularity to enable one skilled in the art to reproduce it without having to resort to the patent. *Bros Inc. v. Browning Mfg. Co.*, 317 F.2d 413, 416 (8th Cir. 1963). It is not necessary, as plaintiff suggests, that the drawings have reached the design stage, much less that the invention be reduced to practice; Section 102(b) by its terms requires only that the publication describe the invention. Nor is it necessary that the information be set in type. *See, Des Rosiers v. Ford Motor Co.*, 143 F.2d 907, 911–912 (1st Cir. 1944), where the court said that "Drawings can anticipate as well as words . . . if they teach to the art what the patentee claims as his invention . . . ." That decision cites *Jockmus v. Leviton*, in which Judge Learned Hand expressed the underlying reasoning as follows:

"We know of no rule that figures can never of themselves be an adequate anticipation of mechanical inventions, as of course they must be of designs . . . Words have their equivocations quite as much as figures; the question always must be what the art necessarily gathered from what appeared."

█ Plaintiff contends further that even if the drawings and descriptions were found to be "printed publications", they were not disseminated with the requisite intent to make the information available to the public. *Cf., Hamilton Laboratories, Inc. v. Massengill*, 111 F.2d 584, 585 (6th Cir. 1940). It asserts that the disclosures made by Vetco were made in confidence as a part of a sales effort. Compare, *Pickering v. Holman*, 459 F.2d 403, 407 (9th Cir. 1972). Even if that were true, it does not negate the effect of the dissemination of the invention by unrestricted distribution by Rucker and Jackson of their drawings. Further, Vetco's own claim is not supported by evidence sufficient to raise a triable issue. It offers only the self-serving statements of its own personnel respecting their state of mind; the drawings themselves were not marked confidential and no evidence has been offered to suggest that any recipient of the information understood it to be communicated in confidence.[3]

█ Nor is there support for Vetco's contention that the law implies an obligation of confidence. That the drawings were given or displayed to prospective customers does not, without more, impose such an obligation. The decisions on which Vetco relies

---

**3.** Vetco claims that it is the custom in the trade to receive such information from a supplier in confidence. It is difficult to perceive the relevance of such a custom in a case where essentially the same information is being widely disseminated to most of the industry by competing suppliers. In any case, Vetco has offered no facts from which it could be found that the recipients of the drawings received them with an understanding that a custom bound them to hold them in confidence. Only one of the affidavits (Harris) is by a (former) employee of a prospective customer and it is silent on the point.

Vetco's contention would have more force if the drawings had only been shown, not given to others. But except for a few instances where this was done, the prints were in fact sent or handed over and left with other persons without restriction as to their use.

do not support its argument. *See, Hoeltke v. CM Kemp Mfg. Co.*, 80 F.2d 912 (4th Cir. 1935); *Schreyer v. Casco Products Corp.*, 190 F.2d 921 (2nd Cir. 1951); *Filtex Corp. v. Amen Atiyeh*, 216 F.2d 443 (9th Cir. 1954); *Heyman v. Ar. Winarick, Inc.*, 325 F.2d 584 (2nd Cir. 1963). Those cases involved disclosures of trade secrets made in the course of negotiations for the licensing or sale of the patent or business itself. They are plainly distinguishable from the instant case in which the supplier disclosed to a number of prospective purchasers a description of the product it desired to sell to them. The court is aware of no authority for treating disclosures in sales materials disseminated to prospective customers as confidential communications in the absence of an agreement by the parties. *Cf., Jockmus v. Leviton*, above.

■ In patent cases, as in other cases, summary judgment may be granted only if there is no genuine issue of material fact. *Walker v. General Motors Corp.*, 362 F.2d 56, 58 (9th Cir. 1966). Plaintiff, in opposing the motion, has sought to inject factual disputes by largely conclusory denials of some of the factual contentions of defendant. None of those denials, however, gives rise to a material issue. Even if the details or specific circumstances of particular disclosures may be subject to dispute, the fact that the claimed invention was widely disseminated in writing by Vetco, Rucker and Jackson to a significant segment of the interested industry is not. Partial summary judgment is therefore appropriate on two of the patent claims, *i. e.*, the straddling arrangement and the means for releasably locking the block and hook support.

■ The prints disseminated did not disclose the means for deceleration. Those means are, however, clearly disclosed as well as claimed in the 1964 Kammerer patent (3,158,208) for a single cylinder motion compensator which defined a restrictive artifice in the cylinder which, in the event of a threatened rapid longitudinal movement, would slow the transfer of the liquid from one side of the piston to the other and thereby slow that movement. (At col. 4, 1.

21–25; col. 8, 1. 14–19, 1. 51–63; compare patent 3,714,995, col. 8, 1. 21–31, containing substantially the same description.) Thus this claim is also barred by Section 102(b).

■ With respect to the claimed means for articulation (Claims 28, 40 and 42 of patent Re. 28,218), it is not clear whether those means were disclosed in the prior drawings and descriptions. The original patent description states that the upper portion of the travelling block is "pivotally secured" to the lower portions, permitting tilting to occur between the travelling block and the compensator (patent 3,714,995, col. 6, 1. 5–11), but made no claim. That the compensator would have to be secured so as to permit it to tilt in relation to the derrick, preventing damage to pistons and cylinders when wave action causes the derrick to lean, and the longitudinal angle between it and the drill string changes, is self-evident. The manner in which this result is achieved here is at most an "improvement or mere variation of a minor character . . . which is not the substance of the patent and does not add anything in itself patentable to it." *Cataphote Corp. v. De Soto Chemical Coatings, Inc.*, 235 F.Supp. 936, 940 (N.D.Cal.1964), *affirmed*, 356 F.2d 24, 27 (9th Cir. 1966). Such an improvement or variation will not avoid the invalidating effect of prior public use or sale. *Cataphote,* above. By the same token, and for the reasons discussed in the following section, it cannot be accepted as avoiding the effect of prior publication of the basic invention claimed.

### III. *Obviousness*

The second issue presented by the motion is whether the patent is invalid under 35 U.S.C. § 103 on the ground that

" . . . the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

We must recognize at the outset that where, as here, the prior art was brought to the attention of the patent examiners, the patent is presumed to be valid and the burden of establishing its invalidity rests on the party asserting it. 35 U.S.C. § 282; *Santa Fe-Pomeroy, Inc. v. P & Z Co., Inc.,* 569 F.2d 1084 (9th Cir. 1978); *Deere & Co. v. Sperry Rand Corp.,* 513 F.2d 1131, 1132 (9th Cir. 1975).

It is nevertheless appropriate for this Court to consider the question of obviousness on motion for summary judgment. If the material facts are not disputed and if on those undisputed facts the differences between the purported invention and the prior art are obvious, summary judgment of invalidity is proper. *Walker v. General Motors Corp.,* above; *see also, Saf-Gard Products, Inc. v. Service Parts, Inc.,* 532 F.2d 1266 (9th Cir. 1976).

In the leading case of *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), Mr. Justice Clark set forth the principles governing the application of Section 103 as follows:

"While the ultimate question of patent validity is one of law, *A. & P. Tea Co. v. Supermarket Corp., supra,* [340 U.S. 147] at 155, [71 S.Ct. 127, at 131, 95 L.Ed. 162] the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

Thus *Graham* mandates three inquiries on the issue of obviousness:

1. The scope and content of the prior art;

2. The differences between the prior art and the claims at issue; and

3. The level of ordinary skill in the pertinent art.

### 1. *The Scope and Content of the Prior Art.*

Defendant contends that the prior art consists of a single cylinder motion compensator as represented by the Kammerer patent (discussed at p. 1210, above). Plaintiff disagrees, contending that the Kammerer patent does not relate either to the "operative principle" or the "mechanical implementation" of the patents in suit.[4] Instead, plaintiff argues, the Court should look for the prior art to the so-called bumper sub. The bumper sub is a slip joint which permits the drill bit to slide vertically inside the drill pipe while still responding to the rotation of the drill pipe. This arrangement permits the drill pipe to move longitudinally with the vessel without affecting the bit but it provides no means for controlling the weight or vertical pressure on the bit during drilling operation. It was the object of the Kammerer patent to correct that particular deficiency. Kammerer therefore was clearly an advance in the state of the art respecting drill string motion compensators.

4. Plaintiff describes these in its brief as follows:
"Operative principle:
1. To employ a pneumatic spring so that the device may be adjusted to selected strains and will automatically adjust for variations in strain as the ship heaves up and down.
2. To arrange for a close coupling of the running string support to the travelling block.
3. Permit the locking of the hook to the travelling block when so coupled."
Mechanical implementation of the operating principle is described as:
"1. The separation of the cylinders of the pneumatic spring so that the travelling block and the hook may be nested between them.
2. The provision of the lock which because of the nesting of the block and hook, can act to lock one to the other."

The patents in issue are in turn improvements on the Kammerer patent. They identify the Kammerer and other patents for single cylinder motion compensating devices as prior art and refer specifically to the vertical space occupied by the motion compensator in the derrick as the significant distinction between the former and present patents. They state the object of the invention to be to reduce the height between the travelling block and hook in existing motion compensators, to provide a means of compensating for sudden load changes, and to provide for locking together of the block and the hook support. (Col. 2, 1. 8–39).

■ We must of course look to the claims to measure the scope of the patent. *Graver Mfg. Co. v. Linde Co.*, 336 U.S. 271, 277, 69 S.Ct. 535, 93 L.Ed. 672 (1949). The claims of the original and reissue patent relate only to the straddling arrangement, the locking device, the deceleration means and the articulation. The claims made are clearly modifications of and improvements on the mechanical arrangement of the single cylinder compensator.

■ Plaintiff's statement of operative principle and mechanical implementation of the patents (quoted in footnote 4) is consistent with what has been said except for its reference to employment of an adjustable pneumatic spring. But the patents in issue do not identify an adjustable pneumatic spring to be one of the objects of the patent or one of the matters it teaches, and it is not the subject of any of the claims. Quite the contrary, they refer to other devices covered by other patents to perform that function. (Patent 3,714,995, col. 3, 1. 43–57.) Plaintiff's suggestion that Kammerer is not prior art because it does not incorporate a pneumatic spring is therefore irrelevant. As the patents in issue make clear, the pneumatic-hydraulic means for maintaining pressure are not a part of the claimed invention. (Re. 28,218, col. 3, 1. 55–65.)

■ It must therefore be concluded that the relevant prior art consists of single cylinder motion compensators as represented by the Kammerer patent. The patentability of the claimed invention must be judged on the basis of the differences between that art and the claims at issue.[5]

2. *The Differences Between the Prior Art and the Claims at Issue.*

■ As shown by the discussion in the foregoing section with respect to the relevant prior art, the differences between that art and the patents at issue consist of

A. The use of dual cylinders rather than a single cylinder and their geometric arrangement in relation to the travelling block;

B. The addition of locking means;

C. The addition of articulation means; and

D. The addition of deceleration means.

3. *The Level of Ordinary Skill in the Pertinent Art.*

In this case, as in *Walker v. General Motors Corp.*, above, the structure disclosed by the prior art is simple and requires no explanation. That the differences between the prior art and the patent, *i. e.*, the rearrangement of the cylinder geometry and the addition of a locking device, was obvious in 1970 when the application for the Vetco patent was filed is conclusively established by the fact that engineers for Rucker and Jackson had conceived the same ideas four years earlier and that those companies had disseminated the ideas widely in the industry. (See p. 1207, above) Plaintiff has offered no evidence and appears to make no claim that any of those engineers possessed more than ordinary skill in the art pertaining to motion compensators. *See Concrete*

5. Arguably, the dual cylinder motion compensators conceived by Rucker and Jackson three years before Vetco could be found to be the prior art. In that case, plaintiff clearly could claim no patentable differences.

*Appliances Co. v. Gomery*, 269 U.S. 177, 185, 46 S.Ct. 42, 70 L.Ed. 222 (1925).[6]

Moreover, it appears to the Court as a matter of law that the differences between the prior art and the patent amount to no more than a simple physical rearrangement of known components of a sort which has consistently been held to be unpatentable by the court of appeals. *Walker v. General Motors Corp.*, above, (separation of automobile fuel tank from fender); *Deere & Co. v. Sperry Rand Corp.*, above, (relocation of raking reel in harvesting machine along with addition of an upper roller and increasing relative speed of rolls); *Regimbal v. Scymansky*, 444 F.2d 333 (9th Cir. 1971) (hop picking machines in which vines hang vertically rather than moving in horizontal fashion).

In *Hewlett-Packard Co. v. Tel-Design, Inc.*, 460 F.2d 625, 629 (9th Cir. 1972), the court said:

"A device . . . is not patentable if it consists of no more than a combination of ideas which are drawn from the existing fund of public knowledge and which produces results that would be expected by one of ordinary skill in the art."

That statement is squarely applicable to the straddling rearrangement of travelling block and cylinders to occupy less space in the derrick and the addition of a physical connection permitting these components to lock. As for the articulation and deceleration means, we have heretofore discussed the reasons why they add nothing patentable to the invention. (See pp. 1210–1211,

above) It cannot be said of the claimed invention in this case either that the mechanical implementation of the operating principle was difficult to achieve, or that the operating principle itself was obscure. Cf., *Saf-Gard Products, Inc. v. Service Parts, Inc.*, above, 532 F.2d at 1271. Rather, the case falls within the general principle stated by the Supreme Court in *Concrete Appliances Co. v. Gomery*, 269 U.S. 177, 185, 46 S.Ct. 42, 45, 70 L.Ed. 222 (1925):

"No novel elements were used by Callahan in his device. We are unable to find that their use in combination in it was more than the application to them of mechanical skill in the course of a natural development and expansion of the art." [7]

*See, also, Gordon Cartons v. Alford Cartons*, 218 F.2d 246, 250 (4th Cir. 1954).

Plaintiff contends that the so-called secondary considerations under *Graham* must be given weight in considering obviousness, *i. e.*, commercial success, long felt but unsolved needs, and failure of others. While these factors may serve as indicia of obviousness or lack of obviousness where the issue is in doubt, they do not establish invention where as here obviousness is clear as a matter of law. *Graham v. John Deere Co.*, above, 383 U.S. at 19–36, 86 S.Ct. 684; *Walker v. General Motors Corp.*, above, 362 F.2d at 60; *Hewlett-Packard Co. v. Tel-Design, Inc.*, above, 460 F.2d at 630–31; *Deere & Co. v. Sperry Rand Corp.*, above, 513 F.2d at 1133.[8]

---

**6.** Plaintiff concedes that Nayler, who prepared the Rucker drawings, had no experience with derricks, well drilling or tools used for that purpose and therefore had less than ordinary skill in the art. (Def. Memo. p. 81) With respect to the others, plaintiff has offered no facts indicating that they possessed more than ordinary skill.

**7.** Although the briefs of the parties have not discussed the applicability of principles governing combination patents, those principles would seem to be relevant at least by analogy. Inasmuch as the patents at issue could fairly be considered to be a new combination of old elements, they would have to meet the test of producing unusual and surprising results. *See, Regimbal v. Scymansky*, above, and cases cit-

ed. No evidence is offered suggesting that the patents could meet this test.

**8.** Plaintiff contends that Rucker should be estopped from claiming obviousness by reason of the application filed by its employee Duncan for a patent on a later similar motion compensator (Patent 3,804,183). The taking of inconsistent positions by an infringer cannot insulate a patent against the defense of obviousness, *Paramount Publix Corp. v. Tri-Ergon Corp.*, 294 U.S. 464, 476–77, 55 S.Ct. 449, 79 L.Ed. 997 (1935), but it may well bar a triable damage claim under the antitrust laws. *Norton Co. v. Carborundum Co.*, 530 F.2d 435, 445 (1st Cir. 1976).

**1214**

### Conclusion

Plaintiff has failed to demonstrate the existence of genuine issues of material fact requiring trial of the issues of anticipation or obviousness. The Court concludes, for the reasons stated, that defendant is entitled to judgment as a matter of law on both issues.

The matter is set for a status conference on June 2, 1978, at 10:00 A.M. for consideration of further proceedings.

IT IS SO ORDERED.